UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>TOWN OF SUNDERLAND, THE H.L. TURNER GROUP, INC., SARA COOPER, and DANA KENNAN,<br><br>   Defendants. | C.A. No. 04-CV-11073-MLW<br><br><br><br>PLAINTIFF'S, D.F. PRAY, REPLY BRIEF IN RESPONSE TO DEFENDANTS, TOWN OF SUNDERLAND, SARA COOPER, AND DANA KENNAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT |

## **INTRODUCTION**

  The Plaintiff, D.F. Pray, hereby files this Reply Brief in Response to Defendants Memorandum in Opposition to Plaintiff's Motion for Leave to Amend filed on behalf of Defendants, Town of Sunderland, Sara Cooper, and Dana Kennan (collectively "Town").

  On May 5, 2004, Plaintiff filed a Complaint in the Massachusetts Superior Court and the matter was removed to the United States District Court, District of Massachusetts, on May 24, 2004.  On July 27, 2004, Plaintiff filed a Motion for Leave to Amend Complaint and Defendant, Town, has filed an opposition to said motion  The parties, on September 2, 2004,  have filed an assented-to Motion for Leave to file additional papers pursuant to Local Rule 7.1.

## **FACTS**

  Plaintiff, D.F. Pray, Inc., (hereinafter "Pray") is a corporation duly conducting business in the Commonwealth of Massachusetts.  See Amended Compl. at  ¶1. Defendant, Town of Sunderland (hereinafter "Sunderland") is a Massachusetts municipal

corporation, Defendant, Sara Cooper (hereinafter "Cooper"), is and was at all relevant times the Town Accountant for Sunderland, and Defendant, Dana Kennan (hereinafter "Kennan"), is and was at all relevant times the Town Manager for Sunderland. See Id. at ¶ 2, 4, 5. Defendant, The H.L. Turner Group, Inc., (hereinafter "Turner") provided architectural services to Sunderland. See Id. at ¶ 3.

Plaintiff, as general contractor, entered into a contract with Sunderland for a project known as Sunderland Elementary Emergency School Work (hereinafter the "project"). See Id. at ¶ 6. On August 25, 2003, Sunderland, through Special Town Meeting, appropriated $4,100,000.00 to rehabilitate, reconstruct, construct and pay any and all expenses for the repair of Sunderland Elementary School. On the same date, Sunderland, through its accountant, Cooper, certified, pursuant to M.G.L. c. 44 §31(c), it possessed $4,100,000.00 for payment on the project.[1] See Amended Compl. Exhibit A.

Throughout the course of the project, various change orders increased the guaranteed maximum price of the project. As a result of these change orders, Plaintiff requested certification from Sunderland that it possessed available funds, pursuant to M.G.L. c. 44 §31(c), to cover the additional work. On September 19, 2003, Sunderland, through its accountant, Cooper, certified currently available project funds of $4,269,000.00. See Amended Compl. Exhibit B. On September 16, 2003, Turner, on behalf of Sunderland, represented available project funds of $4,308,143.00. See

---

[1] M.G.L. c. 44 §31(c), provides, in relevant part,
> No contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public work by any city or town . . . shall be deemed to have been made until the auditor or accountant . . . has certified thereon that appropriation in the amount of such contract is available therefor… No order to the contractor for a change in or addition to the work to be performed under a contract… shall be deemed to have been given until the auditor or accountant, … has certified thereon that an appropriation in the amount of such order is available therefore.

2

Amended Compl. Exhibit C.  In fact, Sunderland did not have the monies it had represented to Pray that it had.

While Sunderland had appropriated and borrowed $4,100,000.00 initially, it used all but $3,150,000.00 for non-construction related matters.  During construction, Sunderland added several items of work, all the time certifying, pursuant to M.G.L. c. 40 §31(c), that funds were available, when, in fact, they were not.  Plaintiff, in reasonable reliance on Sunderland's and Turner's representations, expended $1,488,996.47 of its own monies to complete work on the project, which Sunderland now indicates, it does not have available for payment.

On April 30, 2004, Sunderland, though special town meeting, appropriated an additional $475,000.00 for partial payment for work performed on the project.  In light of this most recent appropriation, counsel for Plaintiff discussed payment of $475,000.00 with counsel for Town, Attorney Thomas McEnaney.  Attorney McEnaney repeatedly stated payment was forthcoming and no objection to payment of the $475,000.00 was ever asserted.

On May 5, 2004, Plaintiff filed its original Complaint in the Massachusetts Superior Court for Bristol County alleging, in part, claims for breach of contract, quantum meruit, misrepresentation, conspiracy, violation of M.G.L. c. 93A, R.I.C.O, violation of 42 U.S.C. 1983, equal protection, breach of the covenant of good faith and fair dealing, and a violation of M.G.L. c. 12 §11(i).  See Amended Compl. at 2-13. Following commencement of the action, notwithstanding the supplemental appropriation of $475,000.00, Sunderland refused to pay Plaintiff.  Plaintiff was given no indication of any opposition to the payment of the $475,000.00 prior to initiation of the current

3

lawsuit. In fact, counsel for Plaintiff informed Attorney McEnaney of Sunderland's refusal to pay the $475,000.00 and indicated its intention to treat said failure as evidence of retaliation against Plaintiff for filing this cause of action. Counsel for Plaintiff further noted Plaintiff would seek to amend its complaint to add a constitutional violation for retaliation. No response regarding this matter was ever received by Plaintiff. Plaintiff has now moved this court for leave to amend its original complaint to add a retaliation action for violations of the First and Fourteenth Amendments of the United States Constitution.

## STANDARD OF REVIEW

"[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend "should be denied *only* when the amendment would be prejudicial to the opposing party, [when] there is bad faith or [when] the amendment would be futile. Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (emphasis added). If the underlying facts are a proper subject of relief, "he [or she] ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). "A complaint is to be construed in the light most favorable to the plaintiff; dismissal is appropriate if it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added)). Civil rights claims are not subject to "heightened" standards of pleading. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167(1993). "We think that it is impossible to

square [a] heightened pleading standard ... with the liberal system of notice pleading set up by the Federal Rules." Id. at 168.

## ARGUMENT

### I.  PLAINTIFF, D.F. PRAY, COMPLIED WITH ARTICLE 7.1(2)

Contrary to Town's contention, counsel for Plaintiff spoke with Town counsel, Attorney Thomas McEnaney, regarding payment of the $475,000.00 appropriated by special town meeting on April 30, 2004.  Attorney McEnaney indicated the money would be paid in a "couple of weeks".  The time for payment had passed at which time counsel for the Plaintiff again consulted with Attorney McEnaney and counsel reconfirmed the money would be paid to Plaintiff in the coming weeks.  As the time for payment passed once again, counsel for Plaintiff discussed the matter again with Attorney McEnaney. Counsel for Plaintiff stated, in part, that if the funds were not forthcoming, said failure would be treated as Town having retaliated against Plaintiff for commencing with this cause of action and Plaintiff would amend its complaint to add a count for retaliation. Prior to the filing of Plaintiff's Motion to Amend, Town counsel had not responded regarding this specific matter.  Plaintiff, in good faith, filed its Motion to Amend on July 27, 2004, approximately six weeks following the last discussion regarding this matter. Counsel for the Plaintiff has attempted to resolve and narrow this issue in accordance with Local Rule 7.1(2), and being unable to, thereafter filed its Motion to Amend.

### II.  PLAINTIFF'S AMENDED  COMPLAINT STATES A CLAIM FOR *RETALIATION* FOR EXERCISING RIGHT OF ACCESS TO COURTS

Town has misconstrued the nature of the additional claim asserted in the Amended Complaint.  Town asserts that this is an "access" case, that is, they rely solely on case law discussing the denial or delay of plaintiff's access to courts.  See Defendants Mem. at 2-

5

6. The Amended Complaint sets forth an additional cause of action, specifically for retaliation. The introductory heading to Count XVI (the additional count), states the allegations concern "Violation of First and Fourteenth Amendments of the United States Constitution: <u>Retaliation</u> for Exercising Right of Access to Courts." <u>See</u> Compl. at 10 (emphasis added). The specific allegations read as follows:

- "Defendants, on April 30, 2004, appropriated, under state law, the sum of $475,000.00 for payment on the Project." <u>See</u> Compl. at ¶81.

- "Defendants have failed and refused to pay any portion of the $475,000.00 appropriated for payment on the project for sums due and owing Pray for work performed by Pray on the Project." <u>See</u> Compl. at ¶82.

- "Defendants' actions deprived Pray of its federal constitutional law rights, privileges and immunities of access to courts and to petition the government to redress grievances when Defendants failed and refused to pay any portion of the $475,000.00 appropriated for payment on the project, in *retaliation*, as punishment, or otherwise conditioned the payment of any portion of the $475,000.00 appropriated for payment on the project, based on the fact Pray chose to exercise its right to seek access to the courts." <u>See</u> Compl. at ¶83 (emphasis added).

- "Defendants', Cooper, Town Accountant, and Kennan, Town Manager, were high-level employees and agents of Sunderland and were responsible for the decision made to refuse to pay Pray any portion of the $475,000.00 appropriated for payment on the project." <u>See</u> Compl. at ¶84.

- "Defendants', Cooper, Town Accountant, and Kennan, Town Manager, conduct clearly violated established law of which a reasonable official would have known." <u>See</u> Compl. at ¶85.

- "Defendants' wrongful acts were taken intentionally, or with reckless or callous disregard for Pray's rights protected by the constitution of the United States." <u>See</u> Compl. at ¶86.

As confirmed by the United States Supreme Court, the right of access to courts is subsumed under the first amendment right to petition the government for redress of grievances. <u>See</u> <u>California Motor Tansp. Vo. v. Trucking Unlimited</u>, 404 U.S. 508, 510, (1972). It is a fundamental right of every citizen. <u>Harrison v. Springdale Water and</u>

Sewer Commission, 780 F.2d 1422, 1428 (8th Cir. 1986)(quoting Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz, 436 F.Supp. 432 (D.Neb. 1976), *aff'd*, 567 F.2d 1381 (8th Cir. 1977), cert. denied, 439 U.S. 841, 99 S.Ct. 132 (1978)).

State officials may not undertake "retaliatory action . . . designed to punish an [individual] for having exercised [his or her right] or to intimidate or chill his [or her] exercise of that right in the future." Id. Further, "[d]eliberate retaliation by state actors against an individual's exercise of [the right to petition the government for redress] is actionable. Soranno's Gasco, Inc., v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). See also Northern Pa. Legal Services Inc., 513 F.Supp. 678, 683-684 (D. Pa. 1981) (official action designed to thwart litigation is a violation of the First Amendment.)

Town's "right of access" analysis is clearly distinguishable from "retaliation." The former falls into two categories: where government action frustrates a plaintiff in preparing and filing a lawsuit, and second, where claims of specific cases cannot be tried. Christopher v. Harbury, 536 U.S. 403, 403 (2002). However, where a retaliatory act was committed in response to Plaintiff's exercise of its right of access to courts, a plaintiff must show (1) conduct under color of state law has (2) deprived him [or her] of rights secured by the United States Constitution or federal law. See Welch v. Paicos, 66 F.Supp.2d 138, 161 (D. Mass. 1999). On the one hand a plaintiff is frustrated from exercising its right of access and on the other hand a plaintiff is retaliated against for exercising that right. As the Harbury Court, supra, noted, a separate and distinct claim must be alleged in "right of access" causes of action. No such requirement is necessary in retaliation cases.

7

Town's memorandum suggests the mere fact Plaintiff has been allowed access to the court, the filing of the present action, the retaliation claim is thereby rendered moot; "[p]laintiff has filed the instant action."  Defendants Memo. at 3.  This argument confuses a right of access case with a retaliation case. Town goes to great lengths to frame the issue as a right of access to the courts when, in fact, as specifically alleged in the complaint, it is a claim for retaliation.  Plaintiff asserts its retaliation claim, as alleged in the Amended Complaint, is proper.  In Silver v. Cormier, 529 F.2d 161, 162-163 (10th Cir, 1976), the court held, that an officer for the Denver Urban Renewal Authority (DURA) violated the plaintiff's constitutional right of access to the courts when the officer threatened to retaliate against plaintiff by withholding legally required payments if the plaintiff's filed suit in connection with a prior sale of property to DURA.  The court further held

> A public official's threat to a citizen to withhold monies due and owing…
> burdens or chills constitutional right of access to the courts.  And this is
> true although the threat is not actually effective.
> Id. at 163.

Silver clearly stands for the proposition that an individual has a legally maintainable cause of action against a defendant if that defendant threatened to retaliate against the individual for exercising his or her right of access to courts. See Id.  The logical next step in this analysis allows for one who has been retaliated against for exercising his or her right of access to the courts to assert a claim for retaliation.  Following Town's reasoning suggests Plaintiff is barred from bringing a cause of action for retaliation since Plaintiff is now before the court.  Once again, a clear example of Town confusing a right of access claim with a retaliation claim.

Heinrich v. Sweet, 62 F.Supp.2d 282, (D. Mass. 1999), cited in Town's brief, focuses on a claim where plaintiffs contended defendants violated their right to commence a lawsuit by denying them access to information necessary to assert their claim. This is clearly distinguishable from the present case. In Heinrich, the central issue was whether government action which delayed filing of a lawsuit was actionable; the court found it was not where "only delay" and not "total deprivation" resulted from defendants conduct. Id. at 315. A right of access issue as opposed to a retaliation case. As in Silver, supra, in the present action, Town's refusal to pay monies due and owing and promised by Town was predicated upon Plaintiff's filing of its lawsuit. This refusal has the effect of "chilling" Plaintiff's constitutional right to petition the court for redress of grievances and is therefore actionable. Silver, 529 F.Supp. at 162-163.

In other analogous cases, federal courts have affirmed retaliation actions where officials, acting under the color of state law, retaliated against individuals for exercising their constitutional right of access to courts. In Soranno's, supra, the court held a petroleum plant operator's constitutional rights were violated when his permit was suspended in retaliation for filing suit against the defendants. Id. at 1310. The court went on to declare "[i]f the plaintiffs can establish that the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights, they have established a First Amendment violation." Id. at 1314. Further, federal courts continue to recognize that government actions, though arguably lawful, "lose legitimacy when designed to

9

punish or deter an exercise of constitutional freedom." Welch, 66 F.Supp.2d at169 (quoting Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980).

Clearly, if Plaintiff were unable to file a retaliation claim due to it having access to the courts, as argued by the Town, it would be unable to seek redress for a violation of the First Amendment. A plaintiff would be forced to accept such conduct as permissible. For example, in Sanders v. St. Louis County, 724 F.2d 665 (1983), the court held an individual's right of access to the courts cannot be infringed, "directly or indirectly" regardless of whether the individual actually succumbs to the opponent's actions, so long as the "retaliatory act was intended to limit … right of access." Id. at 666. If Town's arguments rang true for all retaliation cases, no remedy would exist where a plaintiff has filed an underlying cause of action. It would further allow for egregious misconduct to be committed on the part of individuals absent appropriate remedy before a court of law and would be contradictory to a litany of federal cases.

Town erroneously states, "Plaintiff is merely bootstrapping as the basis of the constitutional count is the very same act as that in the breach of contract." Defendant's Memo. at 5. In Harbury, supra, the United States Supreme Court held plaintiff's "complaint failed to identify an underlying cause of action for relief that the plaintiff would have raised had it not been for the deception alleged." Harbury, 536 U.S. at 405. Since plaintiff was before the court, and the court was able to hear her causes of action, plaintiff could seek redress. It was unnecessary to hear the additional claim as the underlying cause of action was sufficient to address the issue. The Court further stated that "when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense." Id. at 404. Plaintiff, in the present case,

does not allege a "backward-looking denial-of-access claim", but rather a retaliatory claim for Plaintiff having filed this cause of action. Id.

Town further states the alleged retaliatory act preceded the filing of the lawsuit, a fact the Plaintiff vehemently disputes. As alleged in the Amended Complaint, Town appropriated the sum of $475,000.00, by special town meeting held on April 30, 2004, for payment to Plaintiff. Despite having appropriated the monies, which are undisputedly due and owing Plaintiff, and which Town is required to pay pursuant to M.G.L. c. 30 §39K, Town has refused and continues to refuse to pay Plaintiff.

In direct opposition to Town's claim that this decision to refuse payment "preceded" the filing of the lawsuit, Plaintiff's counsel discussed the matter with Town Counsel, who indicated payment was forthcoming in "the coming weeks." Counsel for the Plaintiff, in conversations with Town counsel, confirmed previous conversations with Town counsel as to payment of the $475,000.00 to Plaintiff. Payment was never disputed rather discussion surrounded timing of the payment ensued. It was only until after the filing of the present action that Town repeatedly refused to pay the appropriated monies. Here, Town's refusal to pay (which followed a previous consent to payment) was designed to "punish" and "intimidate" Plaintiff for having filed this cause of action. Sorrano's, 874 F.2d at 1310. Town's "retaliatory act" was committed in response to Plaintiff's exercise of its right of access, and as alleged, is a plausible "chronology of events" supporting its claim of retaliation. Guglielmo v. Cunningham, 811 F.Supp. 31, 36 (D. NH 1993).

Relying on Vickowski v. Hukowicz, 201 F.Supp.2d 195 (D. Mass. 2002), Town suggests Plaintiff's claim relies solely on the temporal proximity between the protected act and the retaliatory act. However, in Vickowski, supra, five and one half years passed

between the filing of the lawsuit and the adverse action, which eviscerated "any causal connection." Id. at 210.  In the present case, Plaintiff's filing and Town's retaliatory act occurred within weeks of one another.

Town further suggests Plaintiff's argument is "akin to a terminated employee seeking to amend a wrongful discharge after the filing of the initial complaint." Defendant's Memorandum at 5.  Town's analogy does not represent any of the facts as stated in the allegations set forth in the Complaint.  The Town is being sued for failing to pay monies justly due and owing which, following appropriation by the Town and confirmation by Town counsel said funds were for payment to Plaintiff, Town has refused to pay Plaintiff as a result of the filing of this cause of action.  The facts as alleged, aver a chronology of events which is clearly contrary to Town's interpretation.  The Amended Complaint states a claim for retaliation based on Town's conduct, which was an attempt to chill or burden Plaintiff from exercising its right of access to courts. Despite this conduct, Plaintiff filed its cause of action, and is entitled to relief before the court, "[a]nd this is true although the threat [was] not actually effective."   Silver, 529 F.2d at163.

### III.  PLAINTIFF'S CONSTITUTIONAL CLAIM IS SEPARATE AND DISTINCT FROM THE UNDERLYING CAUSE OF ACTION

Notwithstanding the fact that Town has confused the issue of retaliation with right of access, Plaintiff asserts, nonetheless, Town's refusal to pay Plaintiff monies due and owing in retaliation for filing this cause of action is a separate and distinct cause of action for a Constitutional violation of Plaintiff's First Amendment rights.  As stated above, Town misconstrues the claim as a denial of access when, in fact, it is a retaliation claim

12

based upon Town's conduct following the filing of this cause of action.  Where the underlying breach of contract action stems from the non-payment of monies under a construction contract, the retaliation claim focuses on Town's actions following the filing of the complaint.

A claim for retaliation did not exist until the filing of the complaint at which point, as detailed above, Town refused payment of the $475,000.00.  Plaintiff is required to show retaliation in only the First Amendment and <u>not</u> in any other count of the Amended Complaint.  <u>See</u> <u>Vickowski</u>, F.Supp. at 206-214.  (discussing First Amendment Retaliation, Equal Protection and Municipal Retaliation in same cause of action.)

Conceivably a fact-finder could determine Town is  legally responsible to Plaintiff for retaliating against them for the filing of the lawsuit yet not find there was an underlying breach of contract.  Hence, one claim is not necessarily intertwined with the other.  Further, as to whether, and in what manner Town retaliated against Plaintiff is a question of fact, more appropriately to be determined by the finder of fact.

## **CONCLUSION**

As alleged, Count XVI of the Amended Complaint clearly states a viable cause of action based on Town's retaliation against Plaintiff for exercising its fundamental First Amendment right.  The claim is both factually specific and based on established law and, drawing all reasonable inferences in the plaintiff's favor, Town has offered no reason as to why Count XVI should not survive.

                                                         Respectfully submitted,

                                                         D.F. PRAY, INC.
                                                         By its attorneys,

                                                         //s// Sabatino F. Leo
                                                         Edward F. Vena, BBO No. 508660
                                                         Sabatino F. Leo, BBO No. 642302
                                                         VENA, RILEY, DEPTULA, LLP

.                                                         250 Summer Street
                                                         Boston, MA  02210
                                                         (617) 951-2400

Date:  September 9, 2004