UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF SUNDERLAND, THE H.L. TURNER GROUP, INC., SARA COOPER, DANA KENNAN,<br><br>Defendants. | C.A. No. 04-CV-11073-MLW<br><br><br>AMENDED COMPLAINT |

## FACTS COMMON TO ALL ALLEGATIONS

1. The Plaintiff, D.F. Pray, Inc., ("Pray") is a Corporation duly conducting business in the Commonwealth of Massachusetts having a last and usual place of business at 25 Anthony Street, Seekonk, Bristol County, Massachusetts. Pray is a general contractor.

2. The Defendant Town of Sunderland ("Sunderland") is a Massachusetts municipal corporation having a last and usual place of business at the Town Offices, 12 School Street, Sunderland, Massachusetts.

3. The Defendant, The H.L. Turner Group, Inc. ("Turner") is a corporation having a last and usual place of business at 27 Locke Road, Concord, New Hampshire. Turner provides architectural services.

4. The Defendant Sara Cooper ("Cooper") is an individual with a last and usual place of residence at 147 Christian Lane, Whately, Massachusetts. Cooper is the Town Accountant for Sunderland.

5. The Defendant Dana Kennan ("Kennan") is an individual with a last and usual place of residence at 404 North Main Street, Petersham, Massachusetts. Kennan is the Town Manager for Sunderland.

6. Pray as a general contractor entered into a contract ("Contract") with Sunderland for a project known as Sunderland Elementary School Emergency Work (the "Project"). A true and accurate copy of the Contract is attached hereto as Exhibit A.

7. Turner provided services to Sunderland, with respect to the design and contract administration of the Project.

8. On July 21, 2003, Sunderland, by and through its Town Accountant, Cooper, certified, in writing, pursuant to M.G.L. c. 44 §31C, "an appropriation available for the [Project] in the amount of this contract."

9. The amount of the Contract at the time of the July 21, 2003, certification was $3,165,000.00.

10. At the time of the execution of the Contract, Sunderland was aware that the $3,165,000.00 amount was not for a fully designed Project.

11. As the Project progressed, the scope of the base contract increased and costs were projected to be above the $3,165,000.00 of the initial base contract amount.

12. On August 25, 2003, Sunderland, by and through its Town Accountant, Cooper, certified, in writing, pursuant to M.G.L. c. 44 §31C available project funds in the amount of $4,100,000.00. A true and accurate copy of this certification is attached hereto as Exhibit B.

13. Sunderland certified the full amount of $4,100,000.00 despite the fact that the amount for actual construction consisted solely of $3,165,000.00.

14. As the work progressed, Sunderland added additional elements of work which increased the cost of the Contract to $3,953,858.00.

15. On or about September 16, 2003, Sunderland, by and through Turner, certified in writing, the following:

> Please find attached copies of the Architect's latest spreadsheets of accounting for the construction GMP and proposed changes. The highest sum total, including all funds that DF Pray has asserted they are due, is $3,953,858.00. This amount is well within the Owner's currently available project funds of $4,308,143.00... Please proceed with the remaining project work including additional work, and provide all required supporting documentation for our review as soon as possible.

A true and accurate copy of this letter is attached hereto as Exhibit C.

16. As a result, Pray requested certification from Sunderland that it possessed available funds, pursuant to M.G.L. c. 44 §31C, to cover this additional work. Pray specifically requested, in correspondence dated September 18, 2003, the following:

> This follows our September 8, 2003 letter, to which we have not received a response from the Town, and our prior notices and requests to the Town for proper certification of funds for our contract a required by M.G.L. c. 44, Sec. 31C. As we have repeatedly discussed, we are perplexed by the Town's delay in providing the required certification. We have been informed by Town officials and the Architect that the Town has sufficient appropriated funds allocated to our contract to cover the currently assessed value of $3,953,858.00. We again request that the Town Accountant provide a certification to that effect so we may be assured that the work can proceed without interruption.

A true and accurate copy of this certification is attached hereto as Exhibit D.

17. On or about September 19, 2003, Turner submitted Construction Change Directive (hereinafter "CCD") No. 29, via facsimile, to Kennan, in an attempt to reconcile project accounting. In said CCD, Turner stated the following:

> You are hereby <u>directed</u> to make the following change(s) in this contract:
> ... Sum total of GMP scope and all additional work not to exceed $3,953,858.00.

A true and accurate copy of this directive is attached hereto as Exhibit E.

3

18. On or about September 19, 2003, Sunderland, through its Town Accountant, Cooper, certified in writing the following:

> After review of the Architect's latest spreadsheets of accounting for the construction of GMP, proposed changes indicate that the highest sum total of construction costs ... is $3,953,858.00. This amount is well within the Owner's currently available project funds of $4,269,000.00... Please proceed with the remaining project work including additional work, and provide all required supporting documentation for our review as soon as possible.

A true and accurate copy of this certification is attached hereto as Exhibit F.

19. Pray, in reasonable reliance on Sunderland's and Turner's representations, expended $1,488,996.47 of its own monies to complete work on the project, which Sunderland does not have available for payment.

20. These assertions were intentionally made in attempt to procure goods and services from Pray despite the fact that Sunderland never had nor obtained the requisite appropriations to cover the cost of construction.

21. This blatant misuse of M.G.L. 44 §31C is a clear attempt to intentionally bypass Massachusetts legislation intended to prevent this type of occurrence, that is, "[n]o department financed by municipal revenue ... shall incur a liability in excess of the appropriation made ..."

22. In April of 2004, Sunderland voted at a Special Town Meeting to appropriate an additional $475,000.00 for the Project, specifically, "to rehabilitate, reconstruct, construct and otherwise repair the" Project. A true and accurate copy of the Special Town Meeting vote is attached hereto as Exhibit G.

23. Sunderland has refused to even pay any of this appropriation to Pray.

24. Sunderland, at no time following its initial appropriation of $4,100,000.00 of which $3,165,000.00 was reserved for the General Contractor, had ever appropriated additional monies to which it certified that it has the requisite funds.

25. On or about July 8, 2004, Sunderland agreed to withdraw this matter form mediation.

26. On July 12, 2004, the AAA acknowledged, in writing, receipt of a letter from counsel for Sunderland dated July 8, 2004, wherein Sunderland agrees with Pray to withdraw this matter from mediation. A true and accurate copy of this letter is attached hereto as Exhibit H.

27. Sunderland, having withdrawn from meditation, has waived its right to mediate.

## COUNT I

(Breach of Contract vs. Sunderland)

28. Pray restates the allegations contained in paragraphs 1 through 27 as if each were set forth fully herein.

29. Pray completed all of its work on the Project.

30. Pray is owed $1,488,996.47 for work it performed for Sunderland on the Project.

31. Pray has made demand on Sunderland for payment of $1,488,996.47 for work performed on the Project.

32. Sunderland, in breach of the Contract, has failed to pay Pray.

## COUNT II

(Quantum Meruit vs. Sunderland)

33. Pray restates the allegations contained in paragraphs 1 through 32 as if each were set forth fully herein.

34. The fair value of the labor, services, material and equipment furnished and installed on the Project by Pray is $1,488,996.47.

35. Pray has requested payment form Sunderland for said $1,488,996.47.

36. Sunderland has failed and refused to pay Pray.

## COUNT III

(Misrepresentation vs. Cooper)

37. Pray restates the allegations in paragraphs 1 through 36 as if each were set forth fully herein.

38. Cooper, as the Town Accountant, on several occasions represented to Pray, through interstate commerce, including through the use of the U.S. mails, that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

39. Cooper provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31C to verify that funds were available to cover the cost of the work, including additional work over and above the original Contract, that Pray was providing to the Project.

40. Cooper knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

41. At the time Cooper made said representations, Cooper knew that they were false, and, that the funds, in fact, did not exist.

42. Cooper made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

43. In reasonable reliance on said misrepresentations by Cooper, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

44. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Cooper.

## COUNT IV

(Negligent Misrepresentation vs. Cooper)

45. Pray restates the allegations contained in paragraphs 1 through 44 as if each were set forth fully herein.

46. Cooper negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work over and above the original Contract, on the Project.

47. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Cooper.

## COUNT V

(Misrepresentation vs. Kennan)

48. Pray restates the allegations in paragraphs 1 through 36 as if each were set forth fully herein.

49. Kennan, as the Town Manager, on several occasions represented to Pray that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

7

50. Kennan provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31C to verify that funds were available to cover the cost of the work, including, additional work over and above the original Contract, that Pray was providing to the Project.

51. Kennan knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

52. At the time Kennan made said representations, he knew that they were false and that the funds, in fact, did not exist.

53. Kennan made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

54. In reasonable reliance on said misrepresentations by Kennan, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

55. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Kennan.

## COUNT VI

(Negligent Misrepresentation vs. Kennan)

56. Pray restates the allegations contained in paragraphs 1 through 36 and 48 through 55 as if each were set forth fully herein.

57. Kennan negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work, over and above the original Contract, on the Project.

58. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Kennan.

## COUNT VII

(Misrepresentation vs. Turner)

59. Pray restates the allegations contained in paragraphs 1 through 58 as if each were set forth fully herein.

60. Turner, on several occasions represented to Pray, through interstate commerce, including through the use of the U.S. mails, that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

61. Turner provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31C to verify that funds were available to cover the cost of the work, including, additional work over and above the original Contract, that Pray was providing to the Project.

62. Turner knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

63. At the time Turner made said representations, it knew that they were false and that the funds, in fact, did not exist.

64. Turner made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

65. In reasonable reliance on said misrepresentations by Turner, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

66. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Turner.

## COUNT VIII

9

(Negligent Misrepresentation vs. Turner)

67. Pray restates the allegations contained in paragraphs 1 through 66 as if each were set forth fully herein.

68. Turner negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work over and above the original Contract, on the Project.

69. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Turner.

## COUNT IX

(Conspiracy vs. Cooper, Kennan and Turner)

70. Pray restates the allegations contained in paragraphs 1 through 69 as if each were set forth fully herein.

71. Cooper, Kennan and Turner, conspired to defraud Pray of its monies for the work it performed on the Project.

72. The numerous misrepresentations made by Cooper, Kennan and Turner to Pray were done in a concerted and calculated effort to defraud Pray.

73. As a result of said conspiracy, Pray has been damaged in the amount of $1,488,996.47.

## COUNT X

(Chapter 93A v. Turner)

74. Pray restates the allegations contained in paragraph 1 through 73 as if each were set forth fully herein.

75. The acts of Turner constituted unfair and deceptive trade practices in violation of M.G.L. c. 93A.

76. Said acts took place in trade or commerce primarily and substantially in the Commonwealth of Massachusetts.

77. Turner's acts were willful and knowing.

78. As a result of Turner's act, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XI

(R.I.C.O. vs. Sunderland, Cooper, Kennan and Turner)

79. Pray restates the allegations contained in paragraphs 1 through 78 as if each were set forth fully herein.

80. Sunderland, Cooper, Kennan and Turner formed an enterprise, as that term is defined in 18 U.S.C. §1961, engaged in activities of which effect interstate commerce.

81. Sunderland, Cooper, Kennan and Turner's fraudulent acts as previously set forth herein constituted violations of the Federal Mail Fraud statute and other fraudulent offenses.

82. Sunderland, Cooper, Kennan and Turner, for the purpose of executing the scheme and artifice to defraud Pray of the amount due and owing under the Contract, used and caused to be used the mails of the United States.

83. Such use of the United States mail for the purposes of effectuating the scheme to deprive Pray of the amounts due and owing them under the Contract included without limitation, the following:

a. On August 25, 2003, Sunderland, by and through its Town Accountant, Cooper, certified, in writing, pursuant to M.G.L. c. 44 §31C available project funds in the amount of $4,100,000.00.

b. On September 16, 2003, Sunderland, by and through Turner, certified in writing, that "the highest sum total, including all funds that DF Pray has asserted they are due, is $3,953,858.00 ... and that this amount is well within the Owner's currently available project funds of $4,308,143.00..."

c. On September 19, 2003, Sunderland, through its Town Accountant, Cooper, certified in writing that "the highest sum total of construction costs ... is $3,953,858.00 and that this amount is well within the Owner's currently available project funds of $4,269,000.00..."

84. The violations of the Federal Mail Fraud Statutes and other fraudulent offenses which occurred on more than one occasion in the last ten yeas, constitutes a pattern of racketeering activity.

85. The use of the mails for the purposes of effectuating the aforesaid scheme to defraud Pray, which occurred on more than one occasion in the last ten years, constitutes a pattern of racketeering activity.

86. Sunderland, Cooper, Kennan and Turner conducted an ongoing enterprise to defraud Pray, including through interstate commerce and the use of the U.S. mails, and such acts constitute a pattern and practice of racketeering activity.

87. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XII

(Violation of 42 USC 1983 against Sunderland, Cooper, Kennan
and Turner for violation of substantive due process)

88. Pray restates the allegations contained in paragraphs 1 through 87 as if each were set forth fully herein.

89. Sunderland, Cooper, Kennan and Turner, acting under color of state law, have deprived Pray of monies and the benefit of its Contract.

90. The acts of Sunderland, Cooper, Kennan and Turner were egregious, outrageous, conscience shocking, offends the community's sense of fair play and decency, and vindictive.

91. The aforementioned acts interfere with Pray's substantive right of due process, including the right not to be deprived of its property and liberty without due process, and therefore, have violated Pray's right to due process of law.

92. As a result of such acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XIII

(Violation of Equal Protection v. Sunderland, Cooper, Kennan and Turner)

93. Pray restates the allegations contained in paragraphs 1 through 92 as if each were set forth fully herein.

94. The acts of Sunderland, Cooper, Kennan and Turner, were done in bad faith and with a malicious intent to injury Pray and deprive Pray of its property and liberty interests, and constitute a gross abuse of government power directed to Pray in contrast to others similarly situated.

95. The acts of Sunderland, Cooper, Kennan and Turner, constituted a gross abuse of and a malicious orchestrated campaign causing substantial harm to Pray.

96. Said acts deprived Pray of its right to equal protection of the law.

97. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XIV

(Breach of Covenant of Good Faith and Fair Dealing with Sunderland)

98. Pray restates the allegations contained in paragraph 1 through 97 as if each were set forth fully herein.

99. By its wrongful acts, Sunderland acting by and through its employees, Cooper and Kennan, and its agent Turner, violated the covenant of good faith and fair dealing.

100. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XV

(Violation of M.G.L. c. 12 § 11(i) vs. Cooper, Kennan, and Turner)

101. Pray restates the allegations contained in paragraph 1 through 100 as if each were set forth fully herein.

102. Cooper and Kennan, through acts of coercion, interfered with Pray's right secured to it by constitution or laws of the United States and the Commonwealth of Massachusetts.

103. Cooper and Kennan used coercion to deprive Pray of its property and liberty interests.

104. As a result of said coercion, Pray has been damaged in the amount of $1,488,996.47.

WHEREFORE, Pray demands that the Court enter judgment in its favor as follows:

a. On Count I, against defendant, the Town of Sunderland, in the amount of $1,488,996.47 together with interest thereon, costs, expenses and reasonable attorney's fees;

b. On Count II, against defendant, the Town of Sunderland, in the amount of $1,488,996.47 together with interest thereon, costs, expenses and reasonable attorney's fees;

c. On Count III, against defendant, Sara Cooper, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

d. On Count IV, against defendant, Sara Cooper, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

e. On Count V, against defendant, Dana Kennan, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

f. On Count VI, against defendant, Dana Kennan, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

g. On Count VII, against defendant, The H.L. Turner Group, Inc., in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

h. On Count VIII, against defendant, The H.L. Turner Group, Inc., in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees;

i. On Count IX, against defendants, Cooper, Kennan and Turner, individually, and, jointly and severally, in the amount of $1,488,996.47, together with interest thereon, costs, expenses and reasonable attorney's fees;

j. On Count X, against defendant Turner:

    1. In an amount of $1,488,996.47;
    2. In an amount up to treble damages, $4,466,989.20; and

      3. Costs, expenses, and reasonable attorney's fees as set forth in M.G.L. c. 93A.

k. On Count XI, against defendants, Sunderland, Cooper, Kennan and Turner, individually, and jointly and severally:

      1. In an amount of $1,488,996.47;

      2. In an amount of up to treble damages, $4,466,989.20; and

      3. Interests, costs, expenses and attorney's fees as provided in 18 U.S.C. §1964(c).

l. On Count XII, against defendants Sunderland, Cooper and Kennan, individually, and, jointly and severally:

      1. For compensatory damages in the amount of $1,488,996.47 with interest thereon;

      2. For punitive damages in the amount of $4,466,989.20 with interest thereon;

      3. For costs, expenses and attorney's fees in accordance with 42 USC 1988; and

      4. For such other relief as the Court deems appropriate and just.

m. On Count XIII, against defendants Sunderland, Cooper and Kennan, individually, and, jointly and severally:

      1. For compensatory damages in the amount of $1,488,996.47 with interest thereon;

      2.. For punitive damages in the amount of $4,466,989.20 with interest thereon;

      3. For costs, expenses and attorney's fees in accordance with 42 USC 1988; and

      4. For such other relief as the Court deems appropriate and just.

n. On Count XIV, against defendant Sunderland:

1. For compensatory damages in the amount of $1,488,996.47 with interest thereon;

2. For punitive damages in the amount of $4,466,989.20 with interest thereon;

3. For costs, expenses and attorney's fees; and

4. For such other relief as the Court deems appropriate and just.

o. On Count XV, against Cooper, Kennan, and Turner in the amount of $1,488,996.47, together with interest thereon, costs, expenses and attorney's fees; and

p. That the Court grant such other relief as it deems appropriate and just.

## JURY DEMAND

D.F. Pray demands trial by jury on all counts and issues so triable.

D.F. Pray, Inc.,
By its attorneys,

Edward F. Vena, BBO #508660
Sabatino F. Leo, BBO #642302
VENA, RILEY, DEPTULA, LLP
250 Summer Street
Boston, MA 02210
Tel: (617) 951-2400

Dated: December 23, 2004