*AIA Document A121/CMc and AGC Document 565*

# Standard Form of Agreement Between Owner and Construction Manager

*where the Construction Manager is also*

## THE CONSTRUCTOR

### 1991 Edition- Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES: CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is referred to herein. This Agreement requires modification if other general conditions are utilized.

Portions of this document are derived from AIA Document A111, Standard Form of Agreement Between the Owner and Contractor where the Basis of Payment is the Cost of the Work Plus a Fee, copyright 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, © 1987 by The American Institute of Architects; other portions are derived from AGC Document 500. Copyright 1980 by The Associated General Contractors of American. Material in this document differing from that found in AIA Document A111 and AGC Document 500 is copyrighted 1991 by The American Institute of Architects and The Associated General Contractors of America. Reproduction of the material herein or substantial quotation of its provisions without written permission of AIA and AGC violates the copyright laws of the United States and will subject the violator to legal prosecution.

## AGREEMENT

made as of the <u>Twenty first</u>day of <u>July</u> in the year of <u>Two Thousand Three</u>
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name and address)*
<u>Town of Sunderland  12 School St.  Sunderland, MA 01375</u>

and the Construction Manager:
*(Name and address)*
<u>DF Pray General Contractors  25 Anthony St.  Seekonk, MA 02771</u>

The Project is:
*(Name, address and brief description)*
<u>Sunderland Elementary School Emergency Work  Swampfield Drive  Sunderland, MA</u>

The Architect is:
*(Name and address)*
<u>The H.L.Turner Group Inc.  27 Locke Rd.  Concord, NH 03301</u>

The Owner and Construction Manager agree as set forth below.

## Table of Contents

**ARTICLE 1  GENERAL PROVISIONS**
  1.1  Relationship of Parties
  1.2  General Conditions

**ARTICLE 2  CONSTRUCTION MANAGER'S RESPONSIBILITIES**
  2.1  Preconstruction Phase

**ARTICLE 6  COST OF THE WORK FOR CONSTRUCTION PHASE**
  6.1  Costs To Be Reimbursed
  6.2  Costs Not To Be Reimbursed
  6.3  Discounts, Rebates and Refunds
  6.4  Accounting Records

S00706

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format A121/CMc-1991

2.2   Guaranteed Maximum Price Proposal and Contract Time
2.3   Construction Phase
2.4   Professional Services
2.5   Unsafe Materials

**ARTICLE 3 OWNER'S RESPONSIBILITIES**
3.1   Information and Services
3.2   Owner's Designated Representative
3.3   Architect
3.4   Legal Requirements

**ARTICLE 4  COMPENSATION AND PAYMENTS FOR PRE-CONSTRUCTION PHASE SERVICES**
4.1   Compensation
4.2   Payments

**ARTICLE 5  COMPENSATION FOR CONSTRUCTION PHASE SERVICES**
5.1   Compensation
5.2   Guaranteed Maximum Price
5.3   Changes in the Work

**ARTICLE 7  CONSTRUCTION PHASE**
7.1   Progress Payments
7.2   Final Payment

**ARTICLE 8  INSURANCE AND BONDS**
8.1   Insurance Required of the Construction Manager
8.2   Insurance Required of the Owner
8.3   Performance Bond and Payment Bond

**ARTICLE 9  MISCELLANEOUS PROVISIONS**
9.1   Dispute Resolution for the Preconstruction Phase
9.2   Dispute Resolution for the Construction Phase
9.3   Other Provisions

**ARTICLE 10  TERMINATION OR SUSPENSION**
10.1   Termination Prior to Establishing Guaranteed Maximum Price
10.2   Termination Subsequent to Establishing Guaranteed Maximum Price
10.3   Suspension

**ARTICLE 11     OTHER CONDITIONS AND SERVICES**

Attachments:   AMENDMENT NO. 1 to Agreement Between Owner and Construction Manager

---

## Standard Form of Agreement Between Owner and Construction Manager Where the Construction Manager is also the Constructor

---

### ARTICLE 1
### GENERAL PROVISIONS

#### 1.1     RELATIONSHIP OF PARTIES

The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the Owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner. The Owner shall endeavor to promote harmony and cooperation among the Owner, Architect, Construction Manager and other persons or entities employed by the Owner for the Project.

#### 1.2     GENERAL CONDITIONS

For the Construction Phase, the General Conditions of the Contract shall be the 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, AIA Document A201 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in AIA Document A201 shall mean the Construction Manager.

### ARTICLE 2          S00707
### CONSTRUCTION MANA

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format  A121/CMc-1991

architecture or engineering, unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Construction Manager has specifically agreed in writing to provide such services. In such event, the Construction Manager shall cause such services to be performed by appropriately licensed professionals.

## 2.5   UNSAFE MATERIALS

In addition to the provisions of Paragraph 10.1 in AIA Document A201, if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance encountered but not created on the site by the Construction Manager, the Construction Manager shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing. The Owner, Construction Manager and Architect shall then proceed in the same manner described in Subparagraph 10.1.2 of AIA Document A201. The Owner shall be responsible for obtaining the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Construction Manager and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Construction Manager and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Construction Manager and Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Construction Manager or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Construction Manager and Architect have no reasonable objection.

## ARTICLE 3
## OWNER'S RESPONSIBILITIES

## 3.1   INFORMATION AND SERVICES

**3.1.1**   The Owner shall provide full information in a timely manner regarding the requirements of the Project, including a program which sets forth the Owner's objectives, constraints and criteria, including space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

**3.1.2**   The Owner, upon written request from the Construction Manager, shall furnish evidence of Project financing prior to the start of the Construction Phase and from time to time thereafter as the Construction Manager may request. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work.

**3.1.3**   The Owner shall establish and update an overall budget for the Project, based on consultation with the Construction Manager and Architect, which shall include contingencies for changes in the Work and other costs which are the responsibility of the Owner.

## 3.1.4   STRUCTURAL AND ENVIRONMENTAL
## TESTS, SURVEYS AND REPORTS

In the Preconstruction Phase, the Owner shall furnish the following with reasonable promptness and at the Owner's expense, and the Construction Manager shall be entitled to rely upon the accuracy of any such information, reports, surveys, drawings and tests described in Clauses 3.1.4.1 through 3.1.4.4, except to the extent that the Construction Manager knows of any inaccuracy:

**3.1.4.1**   Reports, surveys, drawings and tests concerning the conditions of the site which are required by law.

**3.1.4.2**   Surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

**3.1.4.3**   The services of geotechnical engineers when such services are requested by the Construction Manager. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

**3.1.4.4**   Structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports which are required by law.

**3.1.4.5**   The services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Construction Manager.

## 3.2   OWNER'S DESIGNATED REPRESENTATIVE

The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. This representative shall have the authority to make decisions on behalf of the Owner concerning estimates and schedules, construction budgets, and changes in the Work, and shall render such decisions promptly and furnish information

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia – 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager.

## 3.3    ARCHITECT

The Owner shall retain an Architect to provide the Basic Services, including normal structural, mechanical and electrical engineering services, other than cost estimating services, described in the edition of AIA Document B141 current as of the date of this Agreement. The Owner shall authorize and cause the Architect to provide those Additional Services described in AIA Document B141 requested by the Construction Manager which must necessarily be provided by the Architect for the Preconstruction and Construction Phases of the Work. Such services shall be provided in accordance with time schedules

agreed to by the Owner, Architect and Construction Manager. Upon request of the Construction Manager, the Owner shall furnish to the Construction Manager a copy of the Owner's Agreement with the Architect, from which compensation provisions may be deleted.

## 3.4    LEGAL REQUIREMENTS

The Owner shall determine and advise the Architect and Construction Manager of any special legal requirements relating specifically to the Project which differ from those generally applicable to construction in the jurisdiction of the Project. The Owner shall furnish such legal services as are necessary to provide the information and services required under Paragraph 3.1.

## ARTICLE 4
## COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

The Owner shall compensate and make payments to the Construction Manager for Preconstruction Phase services as follows:

## 4.1    COMPENSATION

**4.1.1**    For the services described in Paragraphs 2.1 and 2.2 the Construction Manager's compensation shall be calculated as follows:
*(State basis of compensation, whether a stipulated sum, multiple of Direct Personnel Expense, actual cost, etc. Include a statement of reimbursable cost items as applicable.)*
Stipulated sum for Overhead and Profit = $187,075; stipulated sum for General Conditions/General Requirements = $224,274; stipulated sum for Demolition, Abatement and Mold Remediation = $440,000.

**4.1.2**    Compensation for Preconstruction Phase services shall be equitably adjusted if such services extend beyond 30 days from the date of this Agreement or if the originally contemplated scope of services is significantly modified.

**4.1.3**    If compensation is based on a multiple of Direct Personnel Expense, Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged in the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

## 4.2    PAYMENTS

**4.2.1**    Payments shall be made monthly following presentation of the Construction Manager's invoice and, where applicable, shall be in proportion to services performed.

**4.2.2**    Payments are due and payable 30 (thirty) days from the date the Construction Manager's invoice is received by the Owner. Amounts unpaid after the date on which payment is due shall bear interest at the rate entered below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon.)*
As allowed by Massachusetts General Law.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Construction Manager's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

## ARTICLE 5
## COMPENSATION FOR CONSTRUCTION PHASE SERVICES

The Owner shall compensate the Construction Manager for Construction Phase services as follows:

## 5.1    COMPENSATION

S00709

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia – 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format A121/CMc-1991

**5.1.1** For the Construction Manager's performance of the Work as described in Paragraph 2.3, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article 7 and the Construction Manager's Fee determined as follows:
*(State a lump sum, percentage of actual Cost of the Work or other provision for determining the Construction Manager's Fee, and explain how the Construction Manager's Fee is to be adjusted for changes in the Work.)*
Construction Manager Fee for changes in the work shall be 6.5% of the value of the work.

## 5.2    GUARANTEED MAXIMUM PRICE

**5.2.1** The sum of the Cost of the Work and the Construction Manager's Fee are guaranteed by the Construction Manager not to exceed the amount provided in Amendment No. 1, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.
*(Insert specific provisions if the Construction Manager is to participate in any savings.)*
All savings, if any, shall revert to the Owner before the end of the project.

## 5.3    CHANGES IN THE WORK

**5.3.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of Amendment No. 1 may be determined by any of the methods listed in Subparagraph 7.3.3 of AIA Document A201.

**5.3.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Clause 7.3.3.3 of AIA Document A201 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Subparagraph 7.3.6 of AIA Document A201 shall have the meanings assigned to them in that document and shall not be modified by this Article 5. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**5.3.3** In calculating adjustments to the Contract, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201 shall mean the Cost of the Work as defined in Article 6 of this Agreement and the terms "and a reasonable allowance for overhead and profit" shall mean the Construction Manager's Fee as defined in Subparagraph 5.1.1 of this Agreement.

**5.3.4** If no specific provision is made in Subparagraph 5.1.1 for adjustment of the Construction Manager's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Subparagraph 5.1.1 will cause substantial inequity to the Owner or Construction Manager, the Construction Manager's Fee shall be equitably adjusted on the basis of the fee established for the original Work.

## ARTICLE 6
## COST OF THE WORK FOR CONSTRUCTION PHASE

## 6.1    COSTS TO BE REIMBURSED

**6.1.1** The term "Cost of the Work" shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than those customarily paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 6.

## 6.1.2   LABOR COSTS

.1 Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops.

.2 Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site with the Owner's agreement.
*(If it is intended that the wages or salaries of certain personnel stationed at the Construction Manager's principal office or offices other than the site office shall be included in the Cost of the Work, such personnel shall be identified below.)*
All wages and salaries for fee and general conditions/requirements work and demolition, abatement and mold remediation work are included per 4.1.1

S00710

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

    .3  Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

    .4  Costs paid or incurred by the Construction Manager for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements, and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided that such costs are based on wages and salaries included in the Cost of the Work under Clauses 6.1.2.1 through 6.1.2.3.

## 6.1.3 SUBCONTRACT COSTS

Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

## 6.1.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

    .1  Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.

    .2  Costs of materials described in the preceding Clause 6.1.4.1 in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager; amounts realized, if any, from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

## 6.1.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

    .1  Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Construction Manager. Cost for items previously used by the Construction Manager shall mean fair market value.

    .2  Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site, whether rented from the Construction Manager or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

    .3  Costs of removal of debris from the site.

    .4  Reproduction costs, costs of telegrams, facsimile transmissions and long-distance telephone calls, postage and express delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

    .5  That portion of the reasonable travel and subsistence expenses of the Construction Manager's personnel incurred while traveling in discharge of duties connected with the Work.

## 6.1.6 MISCELLANEOUS COSTS

    .1  That portion directly attributable to this Contract of premiums for insurance and bonds.
        *(If charges for self insurance are to be included, specify the basis of reimbursement.)*
        <u>All costs of insurances and bonds are included in Fee.</u>        **S00711**

    .2  Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Construction Manager is liable.

    .3  Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

    .4  Fees of testing laboratories for tests required by the Contract Documents, except those related to nonconforming Work other than that for which payment is permitted by Clause 6.1.8.2.

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia – 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format A121/CMc-1991

.5 Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent or other intellectual property rights arising from such requirement by the Contract Documents; payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims and payments of settlements made with the Owner's consent; provided, however, that such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Construction Manager's Fee or the Guaranteed Maximum Price and provided that such royalties, fees and costs are not excluded by the last sentence of Subparagraph 3.17.1 of AIA Document A201 or other provisions of the Contract Documents.

.6 Data processing costs related to the Work.

.7 Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility to the Owner set forth in this Agreement.

.8 Legal, mediation and arbitration costs, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager in the performance of the Work and with the Owner's written permission, which permission shall not be unreasonably withheld.

.9 Expenses incurred in accordance with the Construction Manager's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, in case it is necessary to relocate such personnel from distant locations.

### 6.1.7    OTHER COSTS

.1 Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

### 6.1.8    EMERGENCIES AND REPAIRS TO DAMAGED OR NONCONFORMING WORK

The Cost of the Work shall also include costs described in Subparagraph 6.1.1 which are incurred by the Construction Manager:

.1 In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.3 of AIA Document A201.

.2 In repairing or correcting damaged or nonconforming Work executed by the Construction Manager or the Construction Manager's Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence or failure to fulfill a specific responsibility to the Owner set forth in this Agreement of the Construction Manager or the Construction Manager's foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Construction Manager, or the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, and only to the extent that the cost of repair or correction is not recoverable by the Construction Manager from insurance, Subcontractors or suppliers.

**6.1.9**    The costs described in Subparagraphs 6.1.1 through 6.1.8 shall be included in the Cost of the Work notwithstanding any provision of AIA Document A201 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Paragraph 6.2.

### 6.2    COSTS NOT TO BE REIMBURSED

**6.2.1**    The Cost of the Work shall not include:

.1 Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Clauses 6.1.2.2 and 6.1.2.3.

.2 Expenses of the Construction Manager's principal office and offices other than the site office except as specifically provided in Paragraph 6.1.

.3 Overhead and general expenses, except as may be expressly included in Paragraph 6.1.

S00712

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC and AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

.4  The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work.

.5  Rental costs of machinery and equipment, except as specifically provided in Subparagraph 6.1.5.2.

.6  Except as provided in Clause 6.1.8.2, costs due to the negligence of the Construction Manager or to the failure of the Construction Manager to fulfill a specific responsibility to the Owner set forth in this Agreement.

.7  Costs incurred in the performance of Preconstruction Phase Services.

.8  Except as provided in Clause 6.1.7.1, any cost not specifically and expressly described in Paragraph 6.1.

.9  Costs which would cause the Guaranteed Maximum Price to be exceeded.

## 6.3  DISCOUNTS, REBATES AND REFUNDS

**6.3.1**  Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before making the payment, the Construction Manager included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Construction Manager with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be secured.

**6.3.2**  Amounts which accrue to the Owner in accordance with the provisions of Subparagraph 6.3.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## 6.4  ACCOUNTING RECORDS

**6.4.1**  The Construction Manager shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Construction Manager's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Project, and the Construction Manager shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 7
## CONSTRUCTION PHASE

## 7.1  PROGRESS PAYMENTS

**7.1.1**  Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

**7.1.2**  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows
__As above.__

**7.1.3**  Provided an Application for Payment is received by the Architect not later than the __25th__ day of a month, the Owner shall make payment to the Construction Manager not later than the __last__ day of the __next__ month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than __30__ days after the Architect receives the Application for Payment.

**7.1.4**  With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

**S00713**

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format  A121/CMc-1991

**7.1.5**   Each Application for Payment shall be based upon the most recent schedule of values submitted by the Construction Manager in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Construction Manager's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

**7.1.6**   Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) the expense which has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**7.1.7**   Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1   Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in Subparagraph 7.3.7 of AIA Document A201, even though the Guaranteed Maximum Price has not yet been adjusted by Change Order.

.2   Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing.

.3   Add the Construction Manager's Fee, less retainage of **five** percent (**5**%). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Subparagraph 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Subparagraph, shall be an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion.

.4   Subtract the aggregate of previous payments made by the Owner.

.5   Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Subparagraph 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation.

.6   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201.

**7.1.8**   Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than **five** percent (**5**%). The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments and retention for subcontracts.

**7.1.9**   Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**7.1.10**   In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Subparagraph 7.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

**7.2**    **FINAL PAYMENT**

S00714

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format   A121/CMc-1991

**7.2.1**    Final payment shall be made by the Owner to the Construction Manager when (1) the Contract has been fully performed by the Construction Manager except for the Construction Manager's responsibility to correct nonconforming Work, as provided in Subparagraph 12.2.2 of AIA Document A201, and to satisfy other requirements, if any, which necessarily survive final payment; (2) a final Application for Payment and a final accounting for the Cost of the Work have been submitted by the Construction Manager and reviewed by the Owner's accountants; and (3) a final Certificate for Payment has then been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**7.2.2**    The amount of the final payment shall be calculated as follows:

.1    Take the sum of the Cost of the Work substantiated by the Construction Manager's final accounting and the Construction Manager's Fee; but not more than the Guaranteed Maximum Price.

.2    Subtract amounts, if any, for which the Architect withholds, in whole or in part, a final Certificate for Payment as provided in Subparagraph 9.5.1 of AIA Document A201 or other provisions of the Contract Documents.

.3    Subtract the aggregate of previous payments made by the Owner.

If the aggregate of previous payments made by the Owner exceeds the amount due the Construction Manager, the Construction Manager shall reimburse the difference to the Owner.

**7.2.3**    The Owner's accountants will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Subparagraph 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager, or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of AIA Document A201. The time periods stated in this Paragraph 7.2 supersede those stated in Subparagraph 9.4.1 of AIA Document A201.

**7.2.4**    If the Owner's accountants report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to proceed in accordance with Article 9 without a further decision of the Architect. Unless agreed to otherwise, a demand for mediation or arbitration of the disputed amount shall be made by the Construction Manager within 60 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to make such demand within this 60-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

**7.2.5**    If, subsequent to final payment and at the Owner's request, the Construction Manager incurs costs described in Paragraph 6.1 and not excluded by Paragraph 6.2 (1) to correct nonconforming Work, or (2) arising from the resolution of disputes, the Owner shall reimburse the Construction Manager such costs and the Construction Manager's Fee, if any, related thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Construction Manager has participated in savings, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Construction Manager.

**ARTICLE 8**
**INSURANCE AND BONDS**

**8.1    INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER**

During both phases of the Project, the Construction Manager shall purchase and maintain insurance as set forth in Paragraph 11.1 of AIA Document A201. Such insurance shall be written for not less than the following limits, or greater if required by law:

**8.1.1**    Workers' Compensation and Employers' Liability meeting statutory limits mandated by State and Federal laws. If (1) limits in excess of those required by statute are to be provided or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:
Per Insurance Schedule at Request for Qualifications/ Proposal 6/17/03.

**8.1.2**    Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury, and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards)

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5. AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - ᴀʟꜱ ᴏ ᴊᴜꜱ ᴀʜᴇ ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format  A121/CMc-1991

|  | |
|---|---|
| per schedule | Each Occurrence |
| per schedule | General Aggregate |
| per schedule | Personal and |
|  | Advertising Injury |
| per schedule | Products-Completed |
| per schedule | Operations Aggregate |

.1   The policy shall be endorsed to have the General Aggregate apply to this Project only.

.2   Products and Completed Operations insurance shall be maintained for a minimum period of at least **two** year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.

.3   The Contractual Liability insurance shall include coverage sufficient to meet the obligations in AIA Document A201 under Paragraph 3.18.

**8.1.3**   Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:

$ **per schedule** Each Accident

**8.1.4**   Other coverage:
*(If Umbrella Excess Liability coverage is required over the primary insurance or retention, insert the coverage limits. Commercial General Liability and Automobile Liability limits may be attained by individual policies or by a combination of primary policies and Umbrella and/or Excess Liability policies.)*
**per schedule**

## 8.2   INSURANCE REQUIRED OF THE OWNER
During both phases of the Project, the Owner shall purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Paragraphs 11.2 and 11.3 of AIA Document A201. Such insurance shall be written for not less than the following limits, or greater if required by law:

**8.2.1**   Property Insurance:

|  | |
|---|---|
| per MA General Law | Deductible Per Occurrence |
| per MA General Law | Aggregate Deductible |

**8.2.2**   Boiler and Machinery insurance with a limit of:

*(If not a blanket policy, list the objects to be insured.)*

$ **per schedule**

## 8.3   PERFORMANCE BOND AND PAYMENT BOND

**8.3.1**   The Construction Manager **shall** *(Insert "shall" or "shall not")* furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder. Bonds may be obtained through the Construction Manager's usual source and the cost thereof shall be included in the Cost of the Work. The amount of each bond shall be equal to **one hundred** percent (**100%**) of the Contract Sum.

**8.3.2**   The Construction Manager shall deliver the required bonds to the Owner at least three days before the commencement of any Work at the Project site.

### ARTICLE 9
### MISCELLANEOUS PROVISIONS

## 9.1   DISPUTE RESOLUTION FOR THE PRECONSTRUCTION PHASE

**9.1.1**   Claims, disputes or other matters in question between

the parties to this Agreement which arise prior to the commencement of the Construction Phase or which relate solely to the Preconstruction Phase services of the Construction Manager or to the Owner's obligations to the Construction Manager during the Preconstruction Phase, shall be resolved by mediation or by arbitration.

**9.1.2**   Any mediation conducted pursuant to this Paragraph

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below, expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

9.1 shall be held in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Demand for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. Any demand for mediation shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for mediation be made after the date when institution of legal or equitable proceedings based upon such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**9.1.3**    Any claim, dispute or other matter in question not resolved by mediation shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

**9.1.4**    Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration may be made concurrently with a demand for mediation and shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based upon such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**9.1.5**    No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Construction Manager and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Construction Manager, a separate contractor as described in Article 6 of AIA Document A201 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner or Construction Manager or a separate contractor as described in Article 6 of AIA Document A201 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute agreement to arbitration of a dispute not described in such consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**9.1.6**    The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## 9.2    DISPUTE RESOLUTION FOR THE CONSTRUCTION PHASE

**9.2.1**    Any other claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof shall be settled in accordance with Article 4 of AIA Document A201, except that in addition to and prior to arbitration, the parties shall endeavor to settle disputes by mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. Any mediation arising under this Paragraph shall be conducted in accordance with the provisions of Subparagraphs 9.1.2 and 9.1.3.

## 9.3    OTHER PROVISIONS

**9.3.1**    Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in the 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction.

## 9.3.2    EXTENT OF CONTRACT

This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

## 9.3.3    OWNERSHIP AND USE OF DOCUMENTS

The Drawings, Specifications and other documents prepared by the Architect, and copies thereof furnished to the Construction Manager, are for use solely with respect to this Project. They are not to be used by the Construction Manager, Subcontractors, Sub-subcontractors or suppliers on other projects, or for additions to this Project outside the scope of the Work, without the specific written consent of the Owner and Architect. The Construction Manager, Subcontractors, Sub-subcontractors and suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents.

## 9.3.4    GOVERNING LAW

The Contract shall be governed by the law of the place where the Project is located.

## 9.3.5    ASSIGNMENT                    S00717

The Owner and Construction Manager respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners,

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209.   WARNING:   Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

## ARTICLE 10
## TERMINATION OR SUSPENSION

### 10.1    TERMINATION PRIOR TO ESTABLISHING GUARANTEED MAXIMUM PRICE

**10.1.1**    Prior to execution by both parties of Amendment No. 1 establishing the Guaranteed Maximum Price, the Owner may terminate this Contract at any time without cause, and the Construction Manager may terminate this Contract for any of the reasons described in Subparagraph 14.1.1 of AIA Document A201.

**10.1.2**    If the Owner or Construction Manager terminates this Contract pursuant to this Paragraph 10.1 prior to commencement of the Construction Phase, the Construction Manager shall be equitably compensated for Preconstruction Phase services performed prior to receipt of notice of termination; provided, however, that the compensation for such services shall not exceed the compensation set forth in Subparagraph 4.1.1.

**10.1.3**    If the Owner or Construction Manager terminates this Contract pursuant to this Paragraph 10.1 after commencement of the Construction Phase, the Construction Manager shall, in addition to the compensation provided in Subparagraph 10.1.2, be paid an amount calculated as follows:

    .1    Take the Cost of the Work incurred by the Construction Manager.

    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Paragraph 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Paragraph, an amount which bears the same ratio to that fixed-sum Fee as the Cost of Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.

    .3    Subtract the aggregate of previous payments made by the Owner on account of the Construction Phase.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Clause 10.1.3.1. To the extent that the Owner elects to take legal

assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

Subcontracts, purchase orders and rental agreements entered into by the Construction Manager with the Owner's written approval prior to the execution of Amendment No. 1 shall contain provisions permitting assignment to the Owner as described above. If the Owner accepts such assignment, the Owner shall reimburse or indemnify the Construction Manager with respect to all costs arising under the subcontract, purchase order or rental agreement except those which would not have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner elects not to accept the assignment of any subcontract, purchase order or rental agreement which would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager shall terminate such subcontract, purchase order or rental agreement and the Owner shall pay the Construction Manager the costs necessarily incurred by the Construction Manager by reason of such termination.

### 10.2    TERMINATION SUBSEQUENT TO ESTABLISHING GUARANTEED MAXIMUM PRICE

Subsequent to execution by both parties of Amendment No. 1, the Contract may be terminated as provided in Article 14 of AIA Document A201.

**10.2.1**    In the event of such termination by the Owner, the amount payable to the Construction Manager pursuant to Subparagraph 14.1.2 of AIA Document A201 shall not exceed the amount the Construction Manager would have been entitled to receive pursuant to Subparagraphs 10.1.2 and 10.1.3 of this Agreement.

**10.2.2**    In the event of such termination by the Construction Manager, the amount to be paid to the Construction Manager under Subparagraph 14.1.2 of AIA Document A201 shall not exceed the amount the Construction Manager would be entitled to receive under Subparagraphs 10.1.2 or 10.1.3 above, except that the Construction Manager's Fee shall be calculated as if the Work had been fully completed by the Construction Manager, including a reasonable estimate of the Cost of the Work for Work not actually completed.

### 10.3    SUSPENSION
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201; in such case, the Guaranteed Maximum Price, if established, shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201 except that the term "cost of performance of the Contract" in that Subparagraph shall be understood to mean the Cost of the

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209    WARNING: Unli... photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically prod... AIA and can be reproduced in accordance with your license without violation until the date of expiration as note... below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Work and the term "profit" shall be understood to mean the Construction Manager's Fee as described in Subparagraphs 5.1.1 and 5.3.4 of this Agreement.

## ARTICLE 11
## OTHER CONDITIONS AND SERVICES

Documents incorporated: Request for Qualifications/Proposal-6/17/03 (including Supplemental Conditions to A121; Project Manual Volume 1 (Addendum #1 through Division 2)-6/23/03; Addendum #2-6/24/03; Addendum to Standard Form of Agreement (15 pages, no date); Schematics and Demolition Bid Documents-6/18/03; DF Pray Part A Qualifications Package Submission and Part B Proposal Submission-6/30/03; Additional Changes 7/16/03.

This Agreement entered into as of the day and year first written above.

| OWNER | CONSTRUCTION MANAGER |
|---|---|
| BY: | BY: |
| DATE  7-21-03 | DATE  Ronald H. Lapaire Jr  7-21-03 |
| ATTEST | ATTEST |
| Approved as to form:  Town Counsel | |

---

## Amendment No. 1 to Agreement
## Between Owner and Construction Manager

Pursuant to Paragraph 2.2 of the Agreement, dated July 21. 2003 between Town of Sunderland *(Owner)* and DF Pray *(Construction Manager)*, for Sunderland Elementary School Emergency Work *(the Project)*, the Owner and Construction Manager establish a Guaranteed Maximum Price and Contract Time for the Work as set forth below.

## ARTICLE I
## GUARANTEED MAXIMUM PRICE

The Construction Manager's Guaranteed Maximum Price for the Work, including the estimated Cost of the Work as defined in Article 6 and the Construction Manager's Fee as defined in Article 5, is three million one hundred sixty five thousand Dollars ($3.165.000 (inlcuding alternate for Kindergarten roof replacement)).

This Price is for the performance of the Work in accordance with the Contract Documents listed and attached to this Amendment and marked Exhibits A through F, as follows:

| | | |
|---|---|---|
| Exhibit A | Drawings, Specifications, addenda and General, Supplementary and other Conditions of the Contract on which the Guaranteed Maximum Price is based, pages as above through  dated | |
| Exhibit B | Allowance items, pages Document printing costs per proposal through  dated | S00719 |

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia – 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format  A121/CMc-1991

17

# TOWN ACCOUNTANT
## TOWN OF SUNDERLAND MASSACHUSETTS

Town Offices    12 School Street    Sunderland, MA  01375
Office:  (413) 665-1443       FAX:  (413) 665-1446



July 21, 2003

I hereby certify that there is an appropriation available for the Sunderland Elementary School Emergercy Work in the amount of this contract.

Sara Cooper, Town Accountant

Exhibit C    Assumptions and clarifications made in preparing the Guaranteed Maximum Price, pages <u>per list of documents incorporated listed above</u> through , dated

Exhibit D    Completion schedule, pages <u>as included at Addendum #2</u> through , dated

Exhibit E    Alternate prices, pages <u>Alternate number one (Kindergarten roof relpacement) included in GMP</u> through , dated

Exhibit F    Unit prices, pages <u>none</u> through , dated

## ARTICLE II
## CONTRACT TIME

The date of Substantial Completion established by this Amendment is: <u>August 22, 2003.</u>

OWNER                                        CONSTRUCTION MANAGER

BY                                           BY

DATE    7-21-03                              DATE    7-21-07

ATTEST                                       ATTEST

<u>Approved as to form:</u>
Town Counsel

S00721

© 1991 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. AIA DOCUMENT AIA121/CMC AND AGC DOCUMENT 565 - OWNER-CONSTRUCTION MANAGER AGREEMENT - 1991 EDITION - AIA® - AGC - © 1991 - THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, 1957 E STREET, N.W., WASHINGTON, D.C., 20006-5209. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: df pray a121cmc.aia -- 7/16/2003. AIA License Number 1002479, which expires on 9/30/2003.

Electronic Format A121/CMc-1991

18

# TOWN ACCOUNTANT
TOWN OF SUNDERLAND MASSACHUSETTS

Town Offices    12 School Street    Sunderland, MA  01375
Office:  (413) 665-1443    FAX:  (413) 665-1446



July 21, 2003

I hereby certify that there is an appropriation available for the Sunderland Elementary School Emergercy Work in the amount of this contract.

_Sara Cooper_

Sara Cooper, Town Accountant

# ADDENDUM
## TO STANDARD FORM OF AGREEMENT
## BETWEEN OWNER AND CONSTRUCTION MANAGER
### Where the Construction Manager is also the Contractor
### 1991 Edition—Electronic Format (revised 7/16/03)

This ADDENDUM, made and entered into this 21st day of July, 2003, by and between the Town of Sunderland, Massachusetts (hereinafter, the "Town"), and DF Pray (hereinafter, "Construction Manager") is intended to amend the Agreement between the Town and Construction Manager for Construction Management and Construction services entered into by these parties on the same date of this Addendum (hereinafter, the "Agreement"). Notwithstanding anything to the contrary in the Agreement or the Contract Documents, the Agreement is amended as indicated below, and in the event of any conflict or ambiguity with or between the terms of the Agreement and this Addendum, the terms most favorable to the Town shall control. The Agreement is hereby amended as follows:

1. **Article 2:**

   In the third sentence of the first paragraph, delete the words "and Construction Manager agree" and substitute the word "chooses."

2. **Paragraph 2.1.5.2 and 2.1.5.3**

   In the last sentence of each of the above-referenced paragraphs, delete the word "agreed" and substitute the words "as required"; insert the word "or" between the words "Owner, Architect"; and delete the words "and Construction Manager" in the last line of each of the above-referenced paragraphs.

3. **Paragraph 2.1.7**

   In the second sentence, delete the words following the word "Owner" to the end of the second sentence; change the first word in the third sentence to a lower-case "upon," so that the second and third sentence are combined.

4. **Paragraph 2.1.8**

   At the end of the first sentence, add the following words "or as otherwise provided in this Agreement."

5. **Paragraph 2.2.5**

   Add the following as the last sentence of this paragraph: "The giving or the failure to give notification under this paragraph shall in no way relieve the Construction Manager from its responsibilities under the Agreement or at law, or waive any rights of the Town under the Agreement or at law.

6. **Paragraph 2.2.9**

Add the following as the last sentence of this paragraph: "The failure to so notify shall constitute the Construction Manager's representation that the Drawings and Specifications are consistent with the agreed-upon assumptions and clarifications; and the Construction Manager waives any claim asserting the contrary."

7. **Paragraph 2.3.2.1**

In the third sentence, delete the words "subject to the reasonable objection of."

8. **Paragraph 2.3.2.2**

Delete this paragraph.

9. **Paragraph 2.3.2.6**

In the second sentence, insert the word "detailed" before the words "daily log."

10. **Paragraph 2.5**

Delete the text through "A201" in line 2. Delete all text after the first sentence.

11. **Paragraph 3.1.1**

Delete the word "full" in the first sentence and substitute the word "available."

12. **Paragraph 3.1.2**

Delete this paragraph.

13. **Paragraph 3.1.3**

Delete this paragraph.

14. **Paragraph 3.1.4**

Add the following words at the beginning of the first sentence: "Unless otherwise provided in the Agreement,"; add the words "if available" after the word "following" in line 2, and delete the remainder of the first sentence.

15. **Paragraph 3.1.4.1**

Insert the following at the end of the sentence: ", if any."

S00724

16. **Paragraph 3.1.4.3**

In the first sentence, delete the words "are requested by the Construction Manager" and substitute the following: "if deemed necessary by the Owner."

17. **Paragraph 3.1.4.4**

Insert the following at the end of the sentence: ", if any."

18. **Paragraph 3.1.4.5**

Insert the word "Owner" after the words "reasonably required by the" and delete the remainder of the paragraph.

19. **Add the following new paragraph 3.1.4.6:**

3.1.4.6. INFORMATION NOT GUARANTEED

All information given in the Contract Documents relating to subsurface and other conditions, natural phenomena, existing pipes, and other structures is from the best sources at present available to the Owner. All such information is furnished only for the information and convenience of the Construction Manager and is not guaranteed.

It is agreed and understood that the Owner does not warrant or guarantee that the subsurface or other conditions, natural phenomena, existing pipes, or other structures encountered during construction will be the same as those indicated in the Contract Documents.

Construction Manager ~~has~~ will familiarize ~~d~~ himself with the nature and extent of the Contract Documents, work, locality, and with all local conditions and federal, state, and local laws, rules, ordinances, and regulations that in any manner may affect costs, progress, or performance of the work. Construction Manager ~~has~~ ~~made~~, will make or has caused to be made, examinations, investigations, and tests and studies of such reports and related data in addition to those referred to in the paragraph above as he deems necessary for the performance of the work at the Contract Price, within the Contract Time, and in accordance with the other Terms and Conditions of the Contract Documents; and no additional examinations, tests, investigations, reports, and similar data are or will be required by the Construction Manager for such purposes.

Construction Manager ~~has~~ will correlate ~~d~~ the results of all such observations, examinations, investigations, tests, reports, and data with the Contract Documents. Construction Manager has given the Owner written notice of all conflicts, errors, or discrepancies that he has discovered in the Contract

S00725

3

Documents, and the resolution thereof by the Owner is acceptable to the Construction Manager.

It is further agreed and understood that the Construction Manager shall not use or be entitled to use any of the information made available to him or obtained in any examination made by him in any manner as a basis of or ground for any claim or demand against the Owner, arising from or by reason of any variance which may exist between the information made available and the actual subsurface conditions or other conditions or structures actually encountered during the construction work, except as may otherwise be expressly provided for in the Contract Documents.

**20. Paragraph 3.2**

End the second sentence after the words "and changes in the Work" and delete the remainder of the paragraph.

**21. Paragraph 3.3**

Add the words "Architect's contract with the Owner" after the words "described in the" in line 4, and delete the remainder of the paragraph.

**22. Paragraph 3.4**

Delete this paragraph.

**23. Paragraph 4.1.2**

Delete the word "shall" and substitute the word "may" in its place; insert the words "through no fault of the Construction Manager" after the words "equitably adjusted if" and again after the words "this Agreement or if."

**24. Paragraph 4.1.3**

Delete this paragraph.

**25. Paragraph 4.2.2**

Delete the second sentence of this paragraph.

**26. New Paragraph 4.2.3**

Add the following as new paragraph 4.2.3

4.2.3   Notwithstanding anything in the Agreement to the contrary, the Owner shall make payment to the Construction Manager in accordance with the

S00726

provisions of Sections 39F and 39K (as applicable) of Chapter 30 of the General Laws of the Commonwealth of Massachusetts. The Construction Manager shall submit requisitions for payment as required by said provisions and the directions of the Owner.

**27. Paragraph 6.1.2**

Delete the word "agreement" in line 2 of subparagraphs 6.1.2.1 and 6.1.2.2, and substitute the words "written approval" in their place.

**28. Paragraph 6.1.5**

Delete the word "the" where it appears before the words "construction workers" in subparagraphs 6.1.5.1 and 6.1.5.2; delete the words "and reasonable petty cash expenses of the site office" in subparagraph 6.1.5.4; insert the words "necessary and" before the words "reasonable travel" in subparagraph 6.1.5.5.

**29. Paragraph 6.1.6**

Delete paragraph 6.1.6.6; delete the words "mediation and arbitration" in subparagraph 6.1.6.8; delete subparagraph 6.1.6.9.

**30. Paragraph 6.1.8**

~~Delete this paragraph.~~ As is.

**31. Paragraph 6.1.9**

Insert the words "Unless otherwise provided in this Agreement," at the beginning of the first sentence.

**32. Paragraph 6.2.1**

Delete subparagraph 6.2.1.6 and substitute the following in its place: "Costs due to the negligence or misconduct of the Construction Manager, its employees, agents, subcontractors or those for whom the Construction Manager is responsible or liable, or costs arising out of the Construction Manager's failure to perform in accordance with the Agreement."
Add new subparagraph 6.2.1.10 as follows:

"6.2.1.10  Costs to correct deficient, defective or nonconforming work of the Construction Manager, its employees, agents or subcontractors."

S00727

**33. Paragraph 7.1.7**

Change the reference to "Subparagraph 7.3.7" in line 4 of subparagraph 7.1.7.1 to "Subparagraph 7.3.8"; insert the words "writing in" before the words "advance by the Owner" in line 2 of subparagraph 7.1.7.2.

Add new subparagraph 7.1.7.7 as follows:

"7.1.7.7 Subtract deductions allowed by Sections 39F and 39K (as applicable) of Chapter 30 of the General Laws."

**34. Paragraph 7.1.8**

Delete all text and substitute the following: Payments to subcontractors shall be subject to Section 39F of Chapter 30 of the General Laws.

**35. Paragraph 7.1.9**

Insert the word "written" after the words "Except with the Owner's prior."

**36. Paragraph 7.2**

Insert the following words at the beginning of the first sentence: "Subject to Sections 39F and 39K (as applicable) of Chapter 30 of the General,"

**37. Paragraph 7.2.2**

Add new subparagraph 7.2.2.4 as follows:

"7.2.2.4 Subtract deductions allowed by Sections 39F and 39K (as applicable) of Chapter 30 of the General Laws."

**38. Paragraph 7.2.3**

Delete this paragraph.

**39. Paragraph 7.2.4**

Delete this paragraph.

**40. Paragraph 7.2.5**

Delete this paragraph.

S00728

**41. Article 8**

Delete paragraphs 8.1 and 8.2 and substitute the following in their place:

The Construction Manager shall be responsible to the Town or any third party for any property damage or bodily injury caused by it, any of its subcontractors, employees or agents in the performance of, or as a result of, the work under this Agreement. The Construction Manager hereby certifies that it and any subcontractors retained by it are insured for workers' compensation, property damage, personal and product liability. The Construction Manager and any subcontractor it uses shall purchase, furnish copies of, and maintain in full force and effect insurance policies in the amounts here indicated.

> **General Liability**
> (including coverage for premises – operations, products –
> completed operations, contractual liability, personal injury and broad form
> property damage, including explosion, collapse and underground hazards)
>
> | | |
> |---|---|
> | Bodily Injury Liability: | $1,000,000 per occurrence |
> | Property Damage Liability | $ 500,000 per occurrence |
> | (or combined single limit) | $1,000,000 per occurrence |
>
> **Automobile Liability**
> | | |
> |---|---|
> | Bodily Injury Liability: | $1,000,000 per occurrence |
> | Property Damage Liability | $ 500,000 per occurrence |
> | (or combined single limit) | $1,000,000 per occurrence |
>
> **Workers' Compensation Insurance**
> Coverage for all employees in accordance with Massachusetts General
> Laws
>
> **Property Insurance**
> All risk, builder's risk coverage    Total Contract Price

Upon execution of the Agreement, the Construction Manager shall provide the Town with Certificates of Insurance which include the Town as an additional named insured and which include a thirty day notice of cancellation to the Town.

Insert "shall" in line 1 of paragraph 8.3.1; insert "one hundred" before "percent" in line 3 and "100%" thereafter.

**42. Paragraph 9.1**

~~Delete this paragraph.~~–**See additional changes attached.**

S00729

**43. Paragraph 9.2**

~~Delete this paragraph.~~ - See additional changes attached.

**44. Paragraph 10.1.2**

Insert the words "the fair value of" before the words "Preconstruction Phase Services" in line 4.

**45. Paragraph 10.1.3**

Add new subparagraph 10.1.3.4 as follows:

"10.1.3.4  Subtract costs to correct deficient, defective or nonconforming work of the Construction Manager, its employees, agents or subcontractors."

Delete the last two sentences of the last subparagraph of paragraph 10.1.3 beginning and ending with the following words "If the Owner accepts such assignment, the Owner shall reimburse or indemnify . . . the Construction Manager by reason of such termination."

**46. Paragraph 10.2.1**

Delete the words "by the Owner" in line 1 and the words "pursuant to Subparagraph 14.1.2 of AIA Document A201" in lines 2 and 3.

**47. Paragraph 10.2.2**

Delete this paragraph.

**48. Paragraph 10.3**

Add the following words at the beginning of the first sentence: "Subject to Section 39O of Chapter 30 of the General Laws,"

---

**The following new Articles 11–14 shall be added to the end of the Agreement.**

**ARTICLE 11:  ACCOUNTING REQUIREMENTS:**

The Construction Manager shall maintain all books, records and accounts related to the Project in compliance with the following:

1.    The Construction Manager shall make, and keep for at least six years after final payment, books, records and accounts which in reasonable detail

S00730

8

accurately and fairly reflect the transactions and dispositions of the Construction Manager.

2.  Until the expiration of six years after final payment, the Owner and any other appropriate authority shall have the right to examine any books, documents, papers or records of the Construction Manager or of its consultants that directly pertain to, and involve transactions relating to, the Construction Manager or its consultants.

3.  The Construction Manager shall describe any change in the method of maintaining records or recording transactions which materially affects any statements filed with the Owner, including in the Construction Manager's description the date of the change and reasons therefor, and shall accompany said description with a letter from the Construction Manager's independent certified public accountant approving or otherwise commenting on the changes.

4.  The Construction Manager has filed a statement of management on internal accounting controls as set forth in paragraph 6 below prior to the execution of this Agreement.

5.  The Construction Manager ~~has filed prior to the execution of this Agreement and will continue to file annually, an audited financial statement for the most recent completed fiscal year as set forth in paragraph 8 below.~~ will provide an audited financial statement for this project.

6.  The Construction Manager shall file with the Owner a statement of management as to whether the system of internal accounting controls of the Construction Manager and its subsidiaries reasonably assures that:

    a.  transactions are executed in accordance with management's general and specific authorization;

    b.  transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and to maintain accountability for assets;

    c.  access to assets is permitted only in accordance with management's general or specific authorization; and

    d.  the recorded accountability for assets is compared with existing assets at reasonable

S00731

9

intervals and appropriate action is taken with
respect to any difference.

7.    The Construction Manager shall also file annually with the Owner a
statement prepared and signed by an independent certified public
accountant, stating that such accountant has examined the statements of
management on internal accounting controls, and expressing an opinion as
to:

   a.    whether the representations of management
in response to this Article are consistent
with the result of management's evaluation
of the system of internal accounting
controls; and

   b.    whether such representations of
management are, in addition, reasonable
with respect to transactions and assets in
amounts which would be material when
measured in relation to the Construction
Manager's financial statements.

8.    The Construction Manager shall ~~annually~~ file with the Owner during the
term of this Agreement a financial statement for this project prepared by
an independent certified public accountant on the basis of an audit by such
accountant. The final statement filed shall include the date of final
payment. All statements shall be accompanied by an accountant's report.

## ARTICLE 12:  CERTIFICATIONS:

The Construction Manager certifies that:

1.    The wage rates and other costs used to support the Construction
Manager's compensation are accurate, complete and current at the time of
contracting.

2.    The original contract price and any additions to the contract may be
adjusted within one year of completion of the contract to exclude any
significant amounts due to inaccurate, incomplete or non-concurrent wage
rates or other costs.

3.    It has not given, offered or agreed to give any person, corporation or other
entity any gift, contribution or offer of employment as an inducement for,
or in connection with, the award of this Agreement.

4.    No consultant to or subcontractor for the Construction Manager has given,
offered or agreed to give any gift, contribution or offer of employment to
the Construction Manager, or to any other person, corporation, or entity as

S00732

an inducement for, or in connection with, the award to the consultant or subcontractor of a contract by the Construction Manager.

5. No person, corporation or other entity, other than a bona fide full time employee of the Construction Manager, has been retained or hired by the Construction Manager to solicit for or in any way assist the Construction Manager in obtaining this Agreement upon an agreement or understanding that such person, corporation or other entity be paid a fee or other consideration contingent upon the award of this Agreement to the Construction Manager.

6. It has internal accounting controls as required by M.G.L. c.30, §39R and that the Construction Manager filed and will continue to file an audited financial statement as required by M.G.L. c.30, §39R(d).

## ARTICLE 13: PERFORMANCE OF THE WORK

1. Direction of the Work: The Construction Manager shall supervise and direct the Work, using his best skills and attention which shall not be less than such state of skill and attention generally rendered by the contracting profession for projects similar to the Project in scope, difficulty and location. The Construction Manager shall maintain adequate supervisory personnel at the project site during the performance of the Work. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Agreement.

2. Responsibility for the Work:

(1) The Construction Manager shall be responsible to the Owner for the acts and omissions of his employees, Subcontractors and their agents and employees, and other persons performing any of the Work under a contract with the Construction Manager. This obligation shall also extend to the presence on the Site of suppliers of materials or equipment, their employees, contractors, and agents engaged in the work.

(2) The Construction Manager shall not be relieved from his obligations to perform the Work in accordance with the Contract Documents either by the activities or duties of the Owner in its administration of the Agreement, or by inspections, tests or approvals required or performed by persons other than the Construction Manager.

3. Permits and Fees: Unless otherwise expressly provided, the Construction Manager shall secure and pay for all permits and fees, licenses and inspections necessary for the proper execution and completion of the Work which are customarily secured after execution of the Agreement and which are legally required at the time the bids are received, and the same shall at all times be the

S00733

property of the Owner and shall be delivered to the Owner upon completion of the Project. All local fees for permits have been waived.

4.    Notices, Compliance With Laws:

(1) The Construction Manager shall give all notices and comply with all federal, state and local laws, ordinances, rules, regulations and lawful orders of any public authority bearing on the performance of the Work. The Construction Manager shall provide the Owner with reproductions of all permits, licenses and receipts for any fees paid. The Owner represents that it has disclosed to the Construction Manager all orders and requirements known to the Owner of any public authority particular to this Agreement.

(2) If the Construction Manager observes that any of the Contract Documents are at variance with applicable laws, statutes, codes and regulations in any respect, he shall promptly notify the Owner in writing, and any necessary changes shall be accomplished by appropriate modification.

(3) If the Construction Manager performs any Work which he knows or should know is contrary to such laws, ordinances, rules and regulations, and without such notice to the Owner, he shall assume full responsibility therefor and shall bear all costs attributable thereto.

(4) In the performance of the Work, the Construction Manager shall comply with all applicable federal, state and local laws and regulations including those relating to workplace and employee safety. The Construction Manager shall notify the Owner immediately of any conditions at the place of the work which violate said laws and regulations and shall take prompt action to correct and eliminate any such violations.

5.    Project Superintendent: The Construction Manager shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site at all times during the progress of the Work. The superintendent shall represent the Construction Manager and all communications given to the superintendent shall be as binding as if given to the Construction Manager. Important communications shall be confirmed in writing. Other communications shall be so confirmed on written request in each case.

6.    Progress Schedule: The Construction Manager, immediately after being awarded the Contract, shall prepare and submit for the Owner's information an estimated progress schedule for the Work. The progress schedule shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

7.    Drawings, Specifications and Submittals:

S00734

(1) The Construction Manager shall maintain at the site for the Owner one record copy of all Drawings, Specifications, Addenda, Change Orders and other Modifications, and "As-Built" Drawings and Specifications in good order and marked currently to record all changes made during construction, and approved Shop Drawings, Product Data and Samples. These shall be delivered to the Owner upon completion of the Work.

(2) By approving and submitting Shop Drawings, Product Data and Samples, the Construction Manager represents that he has determined and verified all materials, field measurements, and field construction criteria related thereto, or will do so, and that he has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

(3) The Construction Manager shall not be relieved of responsibility for any deviation from the requirements of the Contract Documents by the Owner's approval of Shop Drawings, Product Data or Samples unless the Construction Manager has specifically informed the Owner in writing of such deviation at the time of submission and the Owner has given written approval to the specific deviation. The Construction Manager shall not be relieved from responsibility for errors or omissions in the Shop Drawings, Product Data or Samples by the Owner's approval thereof.

(4) The Construction Manager shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data or Samples, to revisions other than those requested by the Owner on previous submittals.

(5) No portion of the Work requiring submission of a Shop Drawing, Product Data or Sample shall be commenced until the submittal has been approved by the Owner. All such portions of the Work shall be in accordance with approved submittals.

8.  Protection of the Work and Owner's Property: The Construction Manager shall at all times safely guard the Owner's property from injury or loss in connection with this Agreement. He shall at all times safely guard and protect his own work, and that of adjacent property from damage. The Construction Manager shall replace or make good any such damage, loss or injury. The Construction Manager shall clean the work area and restore it to its original condition upon completion of the work.

9.  Quality of the Work: The Construction Manager shall perform the work in a good, workmanlike manner. The Construction Manager hereby guarantees that the entire work constructed by him under the Agreement will meet fully all requirements thereof as to quality of workmanship and materials. The Construction Manager hereby agrees to make at his own expense any repairs or replacements made necessary by defects in materials or workmanship supplied to

S00735

13

him that become evident within one (1) year after the date of the final payment, and to restore to full compliance with the requirements set forth herein any part of the work constructed hereunder, which during said one (1) year period is found to be deficient with respect to any provisions of the Contract Documents. The Construction Manager also agrees to hold the Owner harmless from claims of any kind arising from damage due to said defects. The Construction Manager shall make all repairs and replacements promptly upon receipt of written orders for same from the Owner. If the Construction Manager fails to make the repairs and replacements promptly, the Owner may do the work and the Construction Manager shall be liable to the Owner for the cost thereof.

10.   Warranty: The Construction Manager guarantees to Owner that all materials incorporated into the work will be new unless otherwise specified or agreed. Prior to final payment, the Construction Manager shall deliver to the Owner all manufacturers' warranties, together with such endorsements or assignments as are necessary to ensure to the Owner the full rights and benefits of such warranties.

## ARTICLE 14:  MISCELANEOUS

1.   <u>Wage Rates</u>

Prevailing Wage Rates as determined by the Commissioner of the Department of Labor and Workforce Development under the provisions of Massachusetts General Laws, Chapter 149, Section 26 to 27G, as amended, apply to this project. It is the responsibility of the Construction Manager to provide the Town with certified payrolls and to comply with all requirements of the above-cited statutes.

The schedules of prevailing wage rates are included in the Contract Documents.

2.   <u>Change Orders and Claims for Extra Work</u>

No changes in the work covered by the approved Contract Documents shall be made without prior written approval of the Owner. If the Construction Manager wishes to make a claim for an increase in the Contract Sum, he shall give the Owner written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Construction Manager before proceeding to execute the Work, except in an emergency endangering life or property. No such claim shall be valid unless so made. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order.

3.   <u>Final Payment, Effect</u>

The acceptance of final payment by the Construction Manager shall constitute a waiver of all claims by the Construction Manager arising under the Agreement.

4.   <u>Terms Required By Law</u>

S00736

This Agreement shall be considered to include all terms required to be included in it by the Massachusetts General Laws, and all other laws, as though such terms were set forth in full herein.

5.  Indemnification

The Construction Manager shall indemnify and hold harmless the Owner from and against any and all claims, damages, losses, and expenses, including attorney's fees, arising out of the performance of this Agreement when such claims, damages, losses, and expenses are caused, in whole or in part, by the acts, errors, or omissions of the Construction Manager or his employees, agents, subcontractors or representatives.

6.  The compensation provided by this Agreement is subject to the availability and appropriation of funds.

OWNER:  TOWN OF SUNDERLAND          CONSTRUCTION MANAGER:

By: _____        By: _____
Name: Thomas Fitzpatrick           Name:
Title: Chairman BOS                Title: Ronald H. Laprise
                                          Vice President
                                          7-21-03

APPROVED AS TO FORM

BY: _____
    Town Counsel

195435/sund/0001

**S00737**

# TOWN ACCOUNTANT
TOWN OF SUNDERLAND MASSACHUSETTS
Town Offices    12 School Street    Sunderland, MA  01375
Office:  (413) 665-1443    FAX:  (413) 665-1446



July 21, 2003

I hereby certify that there is an appropriation available for the Sunderland
Elementary School Emergercy Work in the amount of this contract.

Sara Cooper, Town Accountant

S00738

## SUNDERLAND ELEMENTARY SCHOOL

**Additional changes** to be incorporated into contract documents:

1.  <u>Article 9.1.1</u>: Delete "or by arbitration at the end of paragraph 9.1.1 and replace it with the following: "or if mediation is unsuccessful, by a court of competent jurisdiction."

2.  Delete Articles 9.1.3, 9.1.4, 9.1.5, and 9.1.6.

3.  <u>Article 9.2.1</u>: Delete ", except that in addition and prior to arbitration, the parties shall endeavor to settle disputes by mediation in accordance with the construction industry rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Any mediation arising under this paragraph shall be conducted in accordance with the provisions of subparagraphs 9.1.2 and 9.1.3."

## CHANGES TO AIA A201

1.  <u>Article 4.5 – 4.6</u>:    Delete these articles in their entirety and replace Article 4.5.1 with the following:

The parties agree that any Claim arising out of or related to the Contract shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to the institution of legal proceedings by either party in a court of competent jurisdiction. Unless the parties otherwise agree, the mediation shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association. The request for mediation shall be filed in writing with the other party and the American Arbitration Association.

**OWNER:  TOWN OF SUNDERLAND**          **CONSTRUCTION MANAGER:**

By: _James R. Clancy_                          By: _____
Name: _Thomas Fydenkevez_                  Name: _Ronald H. Lapusi_
Title: _Chairman BOS_                       Title: _Vice President_
                                                 _7-21-03_

**APPROVED AS TO FORM**

BY: _Mark R. Reich_
Town Counsel

# TOWN ACCOUNTANT
TOWN OF SUNDERLAND MASSACHUSETTS
Town Offices    12 School Street    Sunderland, MA  01375
     Office:  (413) 665-1443        FAX:  (413) 665-1446



July 21, 2003

I hereby certify that there is an appropriation available for the Sunderland
Elementary School Emergercy Work in the amount of this contract.

Sara Cooper, Town Accountant

S00740

## SUPPLEMENTAL CONDITIONS to
## A/121CM Owner-Construction Manager Agreement

*The following will be utilized to define and supplement the terms of the Owner/ Construction Manager as Constructor Agreement AIA Document A121/CMc.*

1.2    REVISE: For the Construction Phase, the General Conditions of the Contract shall be the **1997 Edition** of AIA Document A201, General Conditions of the Contract for Construction, which is incorporated herein by reference.

2.1.5.5 ADD: The Owner, Architect, and Construction Manager/ General Contractor (CM/GC) agree to work together during the preparation of Construction Documents to refine a scope of work that can be performed within a Guaranteed Maximum Price. **The parties understand and agree that this Guaranteed Maximum Price is established based upon the amount of money the Owner has available from the Special Town Meeting vote.**

2.2.4    ADD:  A full construction estimate in CSI Spec. Section format corresponding with the Architect's Spec. index, and a written statement of the basis of the preliminary G.M.P. shall be provided to the Owner and Architect within **one (1)** week of selection and of the receipt of Documents at each Phase (Schematic, Design Development, and Final Coordination). The final G.M.P. shall be provided within **one (1)** week of receipt of Construction Documents.

2.3.2.1 ADD:  The CM/GC shall provide a proposed list of work which will be performed by the CM/GC's own forces and shall provide the proposed basis for compensation for this work, including labor rates w/ labor burden for all classes of work.

4.1.1    ADD: Compensation for the Preconstruction Phase services shall not exceed 10% of the CM fee.

5.1.1    ADD: The CM/GC fee has been established as a percentage of the actual cost of the Work, based on the proposal submitted. Adjustments to the fee for Changes in the Work, if required, will be the cost of the approved change plus this percentage fee. General Conditions costs associated with the change, if any, shall be itemized.

5.2.2    ADD: The final Guaranteed Maximum Price will be established at Construction Documents to include a 2% scope/ bidding contingency allowance, to be allocated to the work at the joint discretion of the CM/GC the Architect and the Owner, with a regular accounting provided by the CM/GC.

**S00741**

Supplemental Conditions A121.doc  2623

7-21-07

1

5.2.3    ADD: **If the cumulative results of the bidding process are less than the Guaranteed Maximum Price, 100% of the savings including the remaining contingency allowance shall be assigned to the Owner.**   If the cumulative results of the bidding process are greater than the Guaranteed Maximum Price, the CM/GC, the Architect and the Owner shall collaborate to refine the scope of work.

6.1.2.5 ADD: **Labor costs of CM/GC's own personnel employed in the work**, if any, shall not exceed the prevailing wage rates.

6.1.4.3 ADD: All costs shall be invoiced at direct costs, with all discounts passed through to the Owner, except any discounts for cash payment.

6.1.9.1 ADD: All costs for reimbursable expenses shall be incorporated within Fees and General Conditions.

6.1.10  ADD: **All work and materials will be purchased on a bid basis,** tabulated and discussed with the Owner and the Architect, and a joint decision made of selection of successful bidder.

6.1.11  ADD: All major subcontractors, defined as those subcontracts with greater than $50,000 construction value, shall be prequalified in an agreed upon process, in conjunction with the Owner and Architect.

6.1.12  ADD: The CM/GC shall perform work with his own forces for General Conditions/ Requirements work only, unless otherwise agreed to with a fair method of compensation and accounting determined with the Owner and the Architect.

7.1.4    REVISE: With each Application for Payment, the CM/GC shall provide reasonable support documentation as follows:
• Copies of Subcontractor invoices;
• Copies of vendor or material invoices;
• Payroll forms will be maintained at the CM/GC office and will be made available for review by the Owner and Architect at the same location;
• All other miscellaneous invoices and records of costs expended shall also be maintained at the CM/GC office and made available to the Owner and Architect for review at the same location.

7.1.12  ADD: No payments will be authorized without a Release of Liens.  One release encompassing all Subcontractors and Material Supplies for previous payments is acceptable.

9.3.1    REVISE: Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in the **1997 Edition** of the AIA Document A201, General Conditions of the Contract for Construction.