UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF SUNDERLAND, THE H.L. TURNER GROUP, INC., SARA COOPER, and DANA KENNAN,<br><br>    Defendants. | C.A. No. 04-CV-11073-MLW |

### PLAINTIFF'S, D.F. PRAY INC.'S, MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT

### INTRODUCTION

Now comes the Plaintiff, D.F. Pray (hereinafter "Pray"), and hereby moves this Honorable Court for leave to amend its Complaint. As grounds therefor, Pray states the following:

Pray has ascertained additional facts through document discovery which have shed significant light on the pattern of activity engaged in by the Defendants, Town of Sunderland, Sara Cooper, and Dana Kennan (collectively referred to as "Sunderland") and the H.L. Turner Group, Inc. (hereinafter "Turner"), that is, Sunderland and Turner perpetuated a fraud intentionally and deliberately for the purpose of executing a scheme and artifice to defraud Pray out of goods and services valued at $1,488,996.47.

As additional grounds, Pray states, no undue delay will result, as the parties are currently in discovery, no undue prejudice will result as Pray does not now seek to add additional claims for relief but rather seeks to assert additional

factual allegations, Pray is not seeking to amend in bad faith as the additional facts as well as the very nature of the scheme were revealed during the course of document discovery and Pray's complaint is now subject to a Motion for Judgment on the Pleadings by Sunderland.

For the foregoing reasons, Pray requests that this Honorable Court allow this Motion to Amend the Complaint and allow the Amended Complaint attached hereto as Appendix 1.

## **PROCEDURAL HISTORY**

This action was commenced on May 5, 2004, in the Bristol County Superior Court. On May 24, 2004, Sunderland removed the suit to this Court pursuant to 28 U.S.C. §1446. On June 1, 2004, Sunderland, Cooper and Kennan, filed its answer to the Complaint and asserted counterclaims against Pray. Pray answered the counterclaims. On June 21, 2004, Pray submitted its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and initiated document discovery. On August 3, 2004, Pray submitted a Request for Production of Documents and a Request for Interrogatories to Sunderland and Turner. Sunderland and Turner have provided documentation. Pray had noticed the depositions of Sunderland and Turner for the 6th and 14th of January 2005. Now, after six months of active litigation, Sunderland filed this Motion for Judgment on the Pleadings.

For the following reasons, Pray submits that the Motion for Leave to Amend Complaint be allowed.

## **FACTS**

Pray is a corporation duly conducting business in the Commonwealth of Massachusetts. *See* Amended Complaint at ¶1. Defendant, Sunderland is a Massachusetts municipal corporation, Defendant, Sara Cooper (hereinafter "Cooper") is and was at all relevant times the Town Accountant for Sunderland, and Defendant, Dana Kennan (hereinafter "Kennan"), is and was at all relevant times the Town Manager for Sunderland. *See* Id. at ¶ 2, 4, 5. Defendant, Turner, provided architectural services to Sunderland. *See* Id. at ¶ 3.

Pray entered into a contract in the amount of $3,165,000.00 with Sunderland for the construction of a project known as Sunderland Elementary Emergency School Work. *See* Id. at ¶ 6. A true and accurate copy of the Contract is attached as Exhibit A to the Amended Complaint. On August 25, 2003, Sunderland certified to Pray, pursuant to M.G.L. c. 44 §31C that it had available project funds in the amount of $4,100,000.00. A true and accurate copy of this certification is attached hereto as Exhibit B to the Amended Complaint.[1] *See* Id. at ¶ 12. However, of that $4,100,000.00 the amount for <u>actual construction</u> consisted only of $3,165,000.00, which was the value of the Contract. The balance had been expended or encumbered for things such as architects fees, fire suppression and site work.[2] At the time of the execution of the Contract, the Project had not been fully designed because of time

---

[1] This certification was attached to the original Complaint as Exhibit A.
[2] Said $4,100,000.00 was derived as follows: $3,165,000.00 for the General Contractor, $245,000.00 to Architect Fees and $690,000.00 defined as other for a total of $4,1000,000.00 less $450,000.00 for fire suppression and civil/site work

3

constraints, and Sunderland was aware that the scope of the work and cost, would increase as the design was refined.

As the Project progressed, and the design was refined, the scope of the work and the cost increased. Additionally, as the work progressed, Sunderland decided to expand the scope of the Project to include kindergarten renovations and a new roof. On September 8, 2003, Pray, in writing, requested that Sunderland, through its Town Accountant, Cooper, certify the availability of funds for the additional work as required by M.G.L. c. 44 §31C.

On September 16, 2003, Turner, the Project Architect, sent Pray a letter acknowledging an increase in the scope and cost of the work to $3,953,858.00 and indicated the existence of $4,308,143.00 in funds to pay Pray for the additional work. Turner stated the following:

> Please find attached copies of the Architect's latest spreadsheets of accounting for the construction GMP and proposed changes. The highest sum total, including all funds that DF Pray has asserted they are due, is $3,953,858.00. This amount is well within the Owner's currently available project funds of $4,308,143.00... Please proceed with the remaining project work including additional work, and provide all required supporting documentation for our review as soon as possible. See Id. at ¶ 15.[3] A true and accurate copy of this letter is attached as Exhibit C to the Amended Complaint.

This letter was copied to Sunderland's Town Manager, Kennan. In fact, the representation of currently available project funds of $4,308,143.00 was an intentional and deliberate lie.

---

[3] This letter was attached to the original Complaint as Exhibit C.

4

Having not received a response from Cooper, the Town Accountant, who is supposed to give the certification of funds under §31C, Pray again, on September 18, 2004, Pray wrote to Cooper, requesting certification of the funds:

> This follows our September 8, 2003 letter, to which we have not received a response from the Town, and our prior notices and requests to the Town for proper certification of funds for our contract as required by M.G.L. c. 44, Sec. 31C. As we have repeatedly discussed, we are perplexed by the Town's delay in providing the required certification. We have been informed by Town officials and the Architect that the Town has sufficient appropriated funds allocated to our contract to cover the currently assessed value of $3,953,858.00. We again request that the Town Accountant provide a certification to that effect so we may be assured that the work can proceed without interruption. A true and accurate copy of this letter is attached hereto as Exhibit D to the Amended Complaint. See Id. at ¶ 16.

In response to Pray's request, on September 19, 2003, Sunderland, by and through its Town Accountant, Cooper, certified that Sunderland had "available project funds of $4,269,000.00".[4] A true and accurate copy of this letter is attached hereto as Exhibit F to the Amended Complaint.[5] Cooper then requested Pray to "proceed with the remaining Project work, including additional work ..." See Exhibit F. At the time Sunderland, Cooper and Turner represented the availability of funds to cover all additional work, and requested Pray to continue with the work, including additional work, the Defendants knew that that statement was false. However, Pray, having received a written certification from Sunderland under M.G.L. c.44 §31C, and, in reliance thereon, proceeded to perform the additional work. Pray substantially completed the

---

[4] Contemporaneously with this letter, on September 19, 2003, Turner, on behalf of Sunderland, issued a Construction Change Directive ("CCD") no. 29 identifying "additional work not to exceed $3,953,858.00". A true and accurate copy of this memorandum is attached as Exhibit E to the Amended Complaint.

[5] This certification was attached to the original Complaint as Exhibit B.

Project in November of 2003 and Sunderland took beneficial use and occupancy of the schools. Pray submitted a final requisition for payment, but Sunderland has not paid Pray. Indeed, despite the fact that Turner acknowledged that the cost had risen to $3,953,858.00, Sunderland, in an attempt to cover up its lack of funds and buy time and leverage through the litigation process, is now trying to assert that Pray is entitled to less than what it is owed.

Discovery conducted to date has revealed that at no time did Sunderland ever have an appropriation for construction in excess of $3,165,000, the amount of the original contract. Evidence of the lack of appropriations can be seen from Sunderland's own conduct in April 2004 after the Contract had been completed. On April 30, 2004, Sunderland voted at a Special Town Meeting to appropriate an additional $475,000.00 (less than the amount owed to Pray on the Project) "to rehabilitate, reconstruct, construct and otherwise repair" the Project. Sunderland has refused to even pay <u>any</u> of this appropriation to Pray. A true and accurate copy of this Town Meeting Vote is attached hereto as Exhibit G to the Amended Complaint. See <u>Id.</u> at ¶ 22.

These facts, revealed through the course of document discovery, have shed significant light on the pattern of activity in which Sunderland, Cooper, Kennan, and Turner engaged in from the execution of the Contract through the present. Sunderland's motive for lying to Pray about monies available for payment is simple. Sunderland wanted to get its school completed, including all of the bells and whistles, without having the money to do so. Pray had made it known to Sunderland that it would exercise its right, pursuant to M.G.L. c. 44

§31C, not to do any work in excess of $3,165,000.00 unless Sunderland certified the funds. Thus, Sunderland's solution was to certify available Project funds, in order to induce Pray to finish the Project at Pray's expense, and then, use the time and expense of the litigation process to try and work itself out of its loss. In essence, Sunderland used Pray as its bank, and the litigation process to buy time and leverage. Despite the fact that Sunderland's architect acknowledged that the cost of construction had risen to $3,953,858.00 (see Exhibit E and Exhibit F to the Amended Complaint) Sunderland is now forcing Pray to have to fight for its money by asserting frivolous backcharges.

## ARGUMENT

"[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend "should be denied *only* when the amendment would be prejudicial to the opposing party, [when] there is bad faith or [when] the amendment would be futile. Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (emphasis added). As the United States Supreme Court stated in Foman v. Davis, 371 U.S. 178 (1962):

> "Rule 15 (a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to

7

amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

The decision to allow a motion to amend is within the broad discretion of the court, but the general rule is that such amendments should be freely permitted. Murphy v. I.S.K. of New England, Inc., 409 Mass. 842, 864 (1991). The court may consider the following factors in determining whether there is "good reason" to deny the amendment: undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, or futility of amendment. Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264-265 (1991); Goulet v. Whitin Mach. Works, Inc., 399 Mass 547, 549-550 (1987). Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself, to disallow an amendment of a pleading. Carmona v. Toledo, 215 F.3d 124 (1st Cir. 2000).

In Goulet, supra, the Supreme Judicial Court went on to state:

> While 'undue delay' may justify a denial, this court has usually required some factor other than delay, such as the imminence of trial or the plaintiff's attempting to introduce a totally new theory of liability. See Libby v. Commissioner of Correction, 385 Mass. 421, 428 (1982) (trial imminent); Castellucci v. United States Fidelity & Guar. Co. 372 Mass. 288, 290-292 (trial imminent and attempt to substitute "markedly" new theory). See also Genesco, Inc. v. Koufman, 11 Mass. App. Ct. 986, 990 (1981) (delay of eight years between filing suit and attempt to add substantially different claim). These decisions are consistent with the Federal cases which state that delay alone is not enough to justify denial of a motion for leave to amend. (citations omitted). The plaintiffs were not attempting to introduce or substitute a "markedly" different theory of liability, nor was trial any longer imminent. The record shows no indication of bad faith, dilatory tactics or other justification for the motion judge's

8

denial of the plaintiffs' motion for leave to amend. <u>Goulet v. Whitin Mach. Works, Inc.</u>, 399 Mass at 552.

In the case at bar, justice requires that the proposed amendment be granted. First, the amended factual allegations now set forth within the amended complaint were not discovered until discovery commenced. Pray acted diligently in commencing with discovery despite the lack of any scheduling order governing the discovery process. It was only after both Turner and Sunderland produced documents in response to Pray's requests for production was the very nature of the scheme and artifice to defraud Pray revealed. Discovery placed these matters in a context that was unable to be determined prior to document production and corroborate the scheme and artifice to defraud Pray.

Defendants will not be unduly prejudiced by the allowance of this amendment. Pray is not now asserting new claims of which the Defendants can not properly defend, but rather is setting forth more detailed factual allegations that have been revealed through the initial stages of discovery. In the majority of cases where motions to amend have been denied due to "prejudice to the opposing party, the motions followed full proceeding and judgments and sought to raise matters not presented through years of proceeding." <u>Picker International, Inc. v. Leavitt</u>, 128 F.R.D. 3, 7 (D. Mass. 1989). In the present case, Pray has commenced discovery and the cause of action is barely six months old. No additional discovery would be necessary as a result of the amended complaint as the Defendants have not yet commenced with discovery on their end; that is, there is not now, following allowance of this motion to amend, the need for Defendants to reassess the discovery obtained prior to this

9

stage of litigation as Defendants have yet to begin the process, and, as such, there will not be any need to re-open discovery.

There is clearly no bad faith or dilatory motive on the part of Pray as this motion to amend is brought at a time when the case is six months old and it is not intended to delay or otherwise extend the lawsuit. In such an instance it is more than appropriate to permit the amendment. Picker International, Inc. v. Leavitt, 128 F.R.D at 9.

## CONCLUSION

For the foregoing reasons, Pray requests that this honorable court allow this Motion to Amend Complaint and allow the Amended Complaint attached hereto as Appendix 1.

Respectfully submitted,
D.F. PRAY, INC.
By its attorneys,

Edward R. Vena, BBO No. 508660
Sabatino F. Leo, BBO No. 642302
VENA, RILEY, DEPTULA, LLP
250 Summer Street
Boston, MA 02210
(617) 951-2400

Date: 23 DECEMBER 2004

## **CERTIFICATE OF SERVICE**

    I, Sabatino F. Leo, hereby certify that on this 23RD day of December 2004, I served a copy of the enclosed document via first class mail, postage prepaid to all counsel of record.

_____
Sabatino F. Leo