UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC.<br>     Plaintiff,<br>v.<br><br>TOWN OF SUNDERLAND,<br>THE H.L. TURNER GROUP, INC.<br>SARA COOPER and DANA KENNAN<br><br>     Defendants, | C.A. No. 04-11073-MLW |

**D.F. PRAY, INC.'S OPPOSITION TO MOTION OF THE LAW FIRM OF VENA RILEY DEPTULA LLP TO ENFORCE ATTORNEY LIEN**
(Memorandum of Law Incorporated)

D.F. Pray, Inc. ("Pray") opposes the Motion of Vena Riley Deptula LLP ("VRD") to Enforce Attorney Lien (the "Motion"). By the Motion, VRD, a discharged law firm, seeks to recover what it claims to be the fair and reasonable value of its services -- $18,283.93 for work it performed for Pray in conjunction with the prosecution of claims against the Town of Sunderland (the "Town"). Rather than advancing Pray's claim for its additional costs – as it was hired to do – VRD engaged in a protracted and costly procedural legal battle which stalled Pray's claims for ten months and failed to resolve any substantive issues regarding Pray's entitlement to its costs. More importantly, Pray retained VRD on the express condition that Edward Vena ("Vena") be personally involved and substantially participate in all aspects of the litigation. Notwithstanding this express condition, Vena's participation was minimal, refusing to return phone calls from Pray, and apparently delegating a substantial amount of authority to a group of associates.

As a result of Vena's actions, Pray was forced to retain additional counsel, incur duplicative costs for attorney time, and pay substantial fees to repair the damage created by VRD. In the end, Pray paid over $150,000 to its successor counsel to secure its financial recovery. Pray recognizes that VRD is entitled to the fair and reasonable value of its services (and in fact has offered to settle in good faith with VRD for $6,000) but simply believes that the amount VRD seeks far exceeds the value it received. In further support of Pray's opposition it incorporates by reference the Affidavit of Scott Pray. As additional reasons therefor, Pray assets and avers as follows.

## FACTS

### Pray is retained by the Town of Sunderland to construct the Sunderland Elementary School

Pray, a general contractor, responded to a solicitation by the Town to perform emergency work on the Sunderland Elementary School (the "Project"). Pray agreed to perform the work on the Project for a guaranteed maximum price for $3,165,000. The Town proposed a very aggressive construction schedule to limit the impact to the students.

During the course of construction, Pray incurred additional costs of $1,351,744.59 related to extra work, extended overhead, and materials as a direct result of the Town's delays, changes, additions and alterations to Pray's work. Notwithstanding the significant additional work, Pray substantially completed its work on the Project by November 2003. Nevertheless, the Town disputed Pray's entitlement to these additional costs and refused to pay.

### Vena represents he can force the Town to mediate

The relationship between Pray and the Town deteriorated forcing Pray to demand mediation to collect its additional costs. The Town simply ignored Pray's demand and refused to comply with the terms of the contract. Frustrated by the Town's failure to comply with the mandatory mediation provision Pray, based on a referral, contacted Vena, a principal in the law firm of Vena Riley Deptula ("VRD"), to discuss potential representation of Pray. During its meeting with Vena, Pray expressed its disappointment with the Town's utter lack of cooperation and emphasized its goal of enforcing the mediation provision cost-effectively.

In response, Vena represented that he had the skill, knowledge and expertise to represent Pray, that he had represented and continues to represent contractors against municipalities and local agencies in state and federal court, and that he had been and believed that Pray would be successful in suing members of the Town personally. Vena proposed a strategy which involved various theories to sue the Town, the architect and two Town members personally.

Impressed by Vena's strategic plan and his representations of success, Pray retained Vena on the express condition that he be personally involved in all aspects of this action and that he perform substantially all of the work necessary to accomplish Pray's goal. Pray provided Vena a $10,000 retainer.

On or about May 3, 2004, Vena, on behalf of Pray, filed a complaint which included claims against the architect and two Town members for, among other things, misrepresentation, conspiracy, RICO, violation of 42 U.S.C. 1983, violation of equal protection and violation of M.G.L.c. 12, § 11.

After service of the complaint all of the Defendants filed motions - - most of which were dispositive - - seeking to dismiss the case. Rather than resolving Pray's entitlement to additional compensation as Pray had hired Vena to do - - the complaint forced Pray to incur substantial expenses to fight a protracted ten month legal battle to maintain claims which had little merit. Nevertheless, Pray paid Vena's office in excess of $20,000 to resolve the procedural "mess" which it created.

### Vena fails to participate substantially in the action

After the initial filing of the Complaint, Vena's direct involvement in the case appeared to significantly decreased. At least four associates, most of whom had no contact with Pray, appeared to be performing all of the work. Eventually, Vena completely ignored repeated phone calls from Pray and communicated through an associate.

The case appeared to falter from lack of direction, strategy and leadership and Pray became increasingly disappointed with Vena's utter failure to communicate. In late December, after finally discussing the merits of the case with Vena and hearing his analysis of the Defendants' motions, Pray instructed Vena to broker a deal with the Town to mediate.

Despite Pray's express instructions, it appeared that Vena had failed to take any action. Vena's continued failure to communicate forced Pray to seek successor counsel and incur additional expenses in attorney time to review and analyze the case.

Pray incurred an additional $150,000 in fees to complete the mediation and resolve its claims. Despite Vena's "creative" allegations, no Defendant, other than the Town, participated in or contributed money to the settlement.

# ARGUMENT

## VRD's Lien Is Limited To Its Work In This Action

The attorney's lien statute precludes VRD from recovering money it claims due and owing to it for work performed on other matters. M.G.L.c. 221, § 50, provides, in relevant part, that

> [T]he attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim upon the judgment, decree or other order in his client's favor entered or made in such proceeding and upon the proceeds derived there from.

By the plain language of the statute, VRD's lien is limited to the "client's cause of action, counterclaim or claim" and excludes compensation related to other claims. *See Curly Customs, Inc. v. Pioneer Financial*, 62 Mass.App.Ct. 92 (2004). Notwithstanding the plain language of the statute, VRD has attempted to expand the scope of the statute by "boot strapping" fees generated in other cases to increase the amount of its lien. Specifically, VRD has included $2,452.65 for work related to the defense of Pray in two subcontractor disputes. VRD has no lien rights in either of these cases individually and has set forth no justification for including these unrelated costs under its lien claim in this case.

## VRD's Work Had Limited Impact On The Resolution Of The Case And Had Limited Value

Vena performed almost no substantive work or analysis which advanced Pray's claim for its additional work. The general rule in Massachusetts is that after discharge, an attorney can recover only for reasonable value of his services on the basis of *quantum meruit*. *See Salem Realty Co v. Matera*, 384 Mass. 803 (1981). In determining the fair

and reasonable value of an attorneys' services the court should consider the amount recovered and the impact that the attorney had on the result achieved. *See Elbaum v. Sullivan*, 344 Mass. 662, 666-67 (1962). In this case, VRD provided little value and almost no impact on the result achieved. Most if not all of the approximately $40,000 of which VRD seeks compensation was devoted to maintaining claims against Defendants which neither participated in Pray's mediation nor contributed to the settlement. Accordingly, Pray received no actual value from Vena's work. In fact, Vena's work had the opposite effect, delaying the resolution of Pray's substantive claims and forcing Pray to incur additional expenses to repair the damage that these claims caused. *See Mulhern v. Roach*, 398 Mass. 18 (1986) (relevant factors considered in determining the fair and reasonable value of services include not only time spent but the amount of the recovery and the attorney's impact on the actual outcome).

Moreover, despite his express representations, Vena intentionally breached his obligations under the terms and conditions of his contract with Pray. Pray expressly requested that Vena be personally involved in the lawsuit. Nevertheless, after the filing of the complaint, Vena's participation significantly decreases. Vena ignored calls, failed to participate in strategy conferences and allowed the case to stagnate and falter. This is simply not was Pray bargained for or agreed to.

## CONCLUSION

Wherefore, for the above reasons, Pray requests that the Court limit the enforcement of Vena's lien to $6,000.

D.F. PRAY, INC.
By its attorneys,

/s/ RICHARD E. BRIANSKY
Christopher Weld, Jr. (BBO #522230)
Richard E. Briansky, Esq. (BBO# 632709)
Todd & Weld LLP
28 State Street, 31st floor
Boston, Massachusetts 02109
Phone: (617) 720-2626
Fax:    (617) 227-5777

Dated:   January 13, 2006

## CERTIFICATE OF SERVICE

I, Richard E. Briansky, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

| Date: January 13, 2006 | |
|---|---|
| | /s/ Richard E. Briansky |
| | Richard E. Briansky |