Exhibit "A"

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

**FedEx US Airbill**
Express

FedEx Tracking Number: 8467 2544 0620

**1 From** Please print and press hard.

Date 10/29/04

Sender's FedEx Account Number 1845-1189-4

Sender's Name Edward F. Vena     Phone (617) 951-2400

Company VENA RILEY DEPTULA LLP

Address 250 SUMMER ST STE 2

City BOSTON     State MA     ZIP 02210-1134

**2 Your Internal Billing Reference**

Scott Pray

**3 To**

Recipient's Name D.F. Pray, Inc.     Phone (508) 336-3366

Company D.F. Pray, Inc.

Recipient's Address 25 Anthony Street

City Seekonk     State MA     ZIP 02771-3701

**4a Express Package Service**
- FedEx Priority Overnight
- FedEx Standard Overnight
- FedEx First Overnight
- FedEx 2Day
- FedEx Express Saver

**4b Express Freight Service**
- FedEx 1Day Freight
- FedEx 2Day Freight
- FedEx 3Day Freight

**5 Packaging**
- FedEx Envelope
- FedEx Pak
- FedEx Box
- FedEx Tube
- Other

**6 Special Handling**
- SATURDAY Delivery
- HOLD Weekday
- HOLD Saturday

Does this shipment contain dangerous goods?
- No
- Yes (Shipper's Declaration not required)
- Yes (As per attached Shipper's Declaration)
- Dry Ice
- Cargo Aircraft Only

**7 Payment** Bill to:
- Sender
- Recipient
- Third Party
- Credit Card
- Cash/Check

Total Packages     Total Weight     Total Declared Value $         .00

**8 Sign to Authorize Delivery Without a Signature**

0279228338

**Try online shipping at fedex.com.**

Questions? Visit our Web site at fedex.com or call 1.800.GoFedEx 1.800.463.3339.

Sender's Copy

466



**VENA, RILEY, DEPTULA, LLP**

250 Summer Street, 2nd Floor
Boston, MA 02210

Phone: 617.951.2400
Fax: 617.951.2420

Edward F. Vena
Direct Dial: 617.951.9385
Email: evena@vrdllp.com



October 29, 2004

Scott Pray
D.F. Pray, Inc.
25 Anthony Street
Seekonk, MA 02771-3701

      Re:    D.F. Pray, Inc. v. Town of Sunderland, et al
               U.S. District Court C.A. No.: 04-11073MLW

Dear Scott:

      Enclosed please find two copies of my notes with accompanying exhibits regarding the above-captioned matter.

                    Very truly yours,

                    Edward F. Vena

EFV/cc
Enclosure

# VENA, RILEY, DEPTULA, LLP

### 250 SUMMER STREET
### BOSTON, MA 02210
### (617)951-2400 TELEPHONE
### (617)951-2420 FACSIMILE

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| SCOTT PRAY | EDWARD F. VENA, ESQUIRE |

| COMPANY: | DATE: |
|---|---|
| D.F. PRAY, INC. | OCTOBER 29, 2004 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| (508) 336-0200 | 2 |

| RE: | OUR REFERENCE NO.: |
|---|---|
| Town of Sutherland | 457 |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

**MESSAGE:**

SCOTT,

ATTACHED PLEASE FIND MY NOTES REGARDING THE TOWN OF SUNDERLAND. PLEASE NOTE THAT THE EXHIBITS WILL FOLLOW BY REGULAR MAIL. THANK YOU.

● **COMMENTS:** If you experience any problems with this transmission, or do not receive all pages, please call (617)951-2400. This telecopy is attorney client privileged and contains confidential information intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify this office immediately by telephone, and return the original transmission to us by mail without making a copy.

```
************************
***   TX REPORT   ***
************************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4477 |
| CONNECTION TEL | 15083360200 |
| CONNECTION ID | |
| ST. TIME | 10/29 09:55 |
| USAGE T | 00'46 |
| PGS. SENT | 2 |
| RESULT | OK |

# VENA, RILEY, DEPTULA, LLP

## 250 SUMMER STREET
## BOSTON, MA 02210
## (617)951-2400 TELEPHONE
## (617)951-2420 FACSIMILE

### FACSIMILE TRANSMITTAL SHEET

| TO:<br>SCOTT PRAY | FROM:<br>EDWARD F. VENA, ESQUIRE |
|---|---|
| COMPANY:<br>D.F. PRAY, INC. | DATE:<br>OCTOBER 29, 2004 |
| FAX NUMBER:<br>(508) 336-0200 | TOTAL NO. OF PAGES INCLUDING COVER:<br>2 |
| RE:<br>Town of Sutherland | OUR REFERENCE NO.:<br>457 |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

**MESSAGE:**

SCOTT,

ATTACHED PLEASE FIND MY NOTES REGARDING THE TOWN OF SUNDERLAND. PLEASE NOTE THAT THE EXHIBITS WILL FOLLOW BY REGULAR MAIL. THANK YOU.

● **COMMENTS:** If you experience any problems with this transmission, or do not receive all pages, please call (617)951-2400. This telecopy is attorney client privileged and contains

- C.44 §31 requires that every municipality have an appropriation existing to cover the cost of the contract. (Exhibit A)
- C.44 §31C requires a municipality to certify to a contractor that funds exist to cover the cost of a contract, including any change orders. If a municipality certifies that said funds exist, the contractor is entitled to payment even though those funds do not exist. (Exhibit B)
- D.F. Pray entered into a contract with the Town of Sunderland in the amount of $3,165,000.
- Sunderland certified the existence of an appropriation to cover the cost of the contract in the amount of $3,165,000.
- Sunderland understood that the $3,165,000 was not for a fully designed project and that there would be additional costs incurred as the design developed and the construction progressed.
- Prior to entering into the contract, Sunderland had appropriated and borrowed $4.1 million. However, Sunderland had allocated funds from the $4.1 million for the purposes other than construction. There was only $3,165,000 for construction in the $4.1 million. (Exhibit C)
- As the work progressed, Sunderland added additional elements of work which increased the cost to $3,953,858. (Exhibit D)
- Pursuant to c.44 §31C, D.F. Pray requested the Town certify that an appropriation existed in the amount of $3,953,858. (Exhibit E)
- Pursuant to c.44 §31C Sunderland, acting by and through its architect, H.L. Turner notified Pray that the current cost of the work was $3,953,585 and certified that Sunderland had $4,308,143 of "currently available contract funds". (Exhibit F)
- Pursuant to c.44 §31C, Sunderland certified that there was an existing appropriation in the amount of $3,953.858. It also certified that there were "currently available project funds of $4,269,000". (Exhibit G)
- D.F. Pray, in good faith and in reliance on the representations and under c.44 §31C continued to provide labor, services, materials and equipment.
- After the completion of the work, the Town of Sunderland failed and refused to pay D.F. Pray.
- D.F. Pray discovered that Sunderland did not, in fact, have the funds it had certified it had and, were available for construction.
- On April 30, 2004, the Town voted at town meeting to appropriate an additional $475,000 for the project. (Exhibit H)
- Although the Town appropriated the $475,000 at town meeting (which still is far below the amount certified and owed,) the Town has failed and refused to pay even that money to D.F. Pray.

## COMMONWEALTH OF MASSACHUSETTS

**BRISTOL, SS**

**SUPERIOR COURT DEPARTMENT**
**CIVIL ACTION NO.:** A04-0452

D.F. PRAY, INC., )
          Plaintiff, )
           )
           )
vs. )
           )
TOWN OF SUNDERLAND, )
THE H.L. TURNER GROUP, INC. )
SARA COOPER, AND DANA )
KENNAN, )
          Defendants. )
           )

**COMPLAINT AND JURY DEMAND**

# COPY

## COMMON ALLEGATIONS

1. The Plaintiff, D.F. Pray, Inc., ("Pray") is a Corporation duly conducting business in the Commonwealth of Massachusetts having a last and usual place of business at 25 Anthony Street, Seekonk, Bristol County, Massachusetts. Pray is a general contractor.

2. The Defendant Town of Sunderland ("Sunderland") is a Massachusetts municipal corporation having a last and usual place of business at the Town Offices, 12 School Street, Sunderland, Massachusetts.

3. The Defendant, The H.L. Turner Group, Inc. ("Turner") is a corporation having a last and usual place of business at 27 Locke Road, Concord, New Hampshire. Turner provides architectural services.

4. The Defendant Sara Cooper ("Cooper") is an individual with a last and usual place of residence at 147 Christian Lane, Whately, Massachusetts. Cooper is the Town Accountant for Sunderland.

5.  The Defendant Dana Kennan ("Kennan") is an individual with a last and usual place of residence at 404 North Main Street, Petersham, Massachusetts.  Kennan is the Town Manager for Sunderland.

6.  Pray as a general contractor entered into a contract ("Contract") with Sunderland for a project known as Sunderland Elementary School Emergency Work (the "Project").

7.  Turner provided services to Sunderland, with respect to the design and contract administration of the Project.

## COUNT I
### (Breach of Contract vs. Sunderland)

8.  Pray restates the allegations contained in paragraphs 1 through 7 as if each were set forth fully herein.

9.  Pray completed all of its work on the Project.

10. Pray is owed $1,488,996.47 for work it performed for Sunderland on the Project.

11. Pray has made demand on Sunderland for payment of $1,488,996.47 for work performed on the Project.

12. Sunderland, in breach of the Contract, has failed to pay Pray.

## COUNT II
### (Quantum Meruit vs. Sunderland)

13. Pray restates the allegations contained in paragraphs 1 through 7 as if each were set forth fully herein.

14. The fair value of the labor, services, material and equipment furnished and installed on the Project by Pray is $1,488,996.47.

15. Pray has requested payment form Sunderland for said $1,488,996.47.

16. Sunderland has failed and refused to pay Pray.

2

## COUNT III
### (Misrepresentation vs. Cooper)

17. Pray restates the allegations in paragraphs 1 through 7 as if each were set forth fully herein.

18. Cooper, as the Town Accountant, on several occasions represented to Pray, through interstate commerce, including through the use of the U.S. mails, that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

19. Copies of such letters containing materially false representations are attached hereto and incorporated by reference herein as Exhibits A and B.

20. Cooper provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31(c) to verify that funds were available to cover the cost of the work, including additional work over and above the original Contract, that Pray was providing to the Project.

21. Cooper knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

22. At the time Cooper made said representations, she knew that they were false, and, that the funds, in fact, did not exist.

23. Cooper made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

24. In reasonable reliance on said misrepresentations by Cooper, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

25. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Cooper.

3

## COUNT IV
### (Negligent Misrepresentation vs. Cooper)

26. Pray restates the allegations contained in paragraphs 1 through 7 and 17 through 25, as if each were set forth fully herein.

27. Cooper negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work over and above the original Contract, on the Project.

28. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Cooper.

## COUNT V
### (Misrepresentation vs. Kennan)

29. Pray restates the allegations in paragraphs 1 through 7 as if each were set forth fully herein.

30. Kennan, as the Town Manager, on several occasions represented to Pray that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

31. Kennan provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31(c) to verify that funds were available to cover the cost of the work, including, additional work over and above the original Contract, that Pray was providing to the Project.

32. Kennan knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

33. At the time Kennan made said representations, he knew that they were false and that the funds, in fact, did not exist

4

34. Kennan made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

35. In reasonable reliance on said misrepresentations by Kennan, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

36. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Kennan.

<u>**COUNT VI**</u>
(Negligent Misrepresentation vs. Kennan)

37. Pray restates the allegations contained in paragraphs 1 through 7 and 29 through 36, as if each were set forth fully herein.

38. Kennan negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work, over and above the original Contract, on the Project.

39. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Kennan.

<u>**COUNT VII**</u>
(Misrepresentation vs. Turner)

40. Pray restates the allegations contained in paragraphs 1 through 7, as if each were set forth fully herein.

41. Turner, on several occasions represented to Pray, through interstate commerce, including through the use of the U.S. mails, that sufficient funds existed to cover the cost of the work being performed by Pray, including additional work, over and above the original Contract.

42. A copy of one such letter containing materially false representations is attached hereto and incorporated by reference herein as Exhibit C.

43. Turner provided said representations at the request of Pray pursuant to M.G.L. c. 44 § 31(c) to verify that funds were available to cover the cost of the work, including, additional work over and above the original Contract, that Pray was providing to the Project.

44. Turner knew that Pray would rely on said representations before it would undertake and continue performance of work on the Project.

45. At the time Turner made said representations, it knew that they were false and that the funds, in fact, did not exist.

46. Turner made said representations to induce Pray to continue to expend its own monies, to provide work on the Project.

47. In reasonable reliance on said misrepresentations by Turner, Pray expended $1,488,996.47 of its own monies to complete work on the Project.

48. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Turner.

## COUNT VIII
### (Negligent Misrepresentation vs. Turner)

49. Pray restates the allegations contained in paragraphs 1 through 7 and 40 through 48, as if each were set forth fully herein.

50. Turner negligently misrepresented to Pray that funds existed to cover the cost of the work, including additional work over and above the original Contract, on the Project.

51. Pray has been damaged in the amount of $1,488,996.47 as a direct and proximate result of misrepresentations by Turner.

6

## COUNT IX
### (Conspiracy vs. Cooper, Kennan and Turner)

52. Pray restates the allegations contained in paragraphs 1 through 51 as if each were set forth fully herein.

53. Cooper, Kennan and Turner, conspired to defraud Pray of its monies for the work it performed on the Project.

54. The numerous misrepresentations made by Cooper, Kennan and Turner to Pray were done in a concerted and calculated effort to defraud Pray.

55. As a result of said conspiracy, Pray has been damaged in the amount of $1,488,996.47.

## COUNT X
### (Chapter 93A v. Turner)

56. Pray restates the allegations contained in paragraph 1 through 7 and 40 through 48, as if each were set forth fully herein.

57. The acts of Turner constituted unfair and deceptive trade practices in violation of c. 93A.

58. Said acts took place in trade or commerce primarily and substantially in the Commonwealth of Massachusetts.

59. Turner's acts were willful and knowing.

60. As a result of Turner's act, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XI
### (R.I.C.O. vs. Sunderland, Cooper, Kennan and Turner)

61. Pray restates the allegations contained in paragraphs 1 through 7, and 52 through 55, as if each were set forth fully herein.

7

62. Sunderland, Cooper, Kennan and Turner conducted an ongoing enterprise to defraud Pray, including through interstate commerce and the use of the U.S. mails, and such acts constitute a pattern and practice of racketeering activity.

63. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XII
(Violation of 42 USC 1983 against Sunderland, Cooper, Kennan
and Turner for violation of due process)

64. Pray restates the allegations contained in paragraphs 1 through 7 and 52 though 55 and 61 through 63, as if each were set forth fully herein.

65. Sunderland, Cooper, Kennan and Turner, acting under color of state law, have deprived Pray of monies and the benefit of its Contract.

66. The acts of Sunderland, Cooper, Kennan and Turner were egregious, outrageous, conscience shocking, and, coercive, and intended to deprive Pray of its property without due process.

67. The aforementioned acts interfere with Pray's substantive right of due process, including the right not to be deprived of its property and liberty without due process, and therefore, have violated Pray's right to due process of law.

68. As a result of such acts, Pray has been damaged in the amount of $1,488,996.47.

## COUNT XIII
(Violation of Equal Protection v. Sunderland, Cooper, Kennan and Turner)

69. Pray restates the allegations contained in paragraphs 1 through 7 and 52 through 55 and 61 through 68, as if each were set forth fully herein.

70. The acts of Sunderland, Cooper, Kennan and Turner, were done in bad faith and with a malicious intent to injury Pray and deprive Pray of its property and liberty

interests, and constitute a gross abuse of government power directed to Pray in contrast to others similarly situated.

71. Said acts deprived Pray of its right to equal protection of the law.

72. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

### COUNT XIV
(Breach of Covenant of Good Faith and Fair Dealing with Sunderland)

73. Pray restates the allegations contained in paragraph 1 through 7 and 8 through 16 as if each were set forth fully herein.

74. By its wrongful acts, Sunderland acting by and through its employees, Cooper and Kennan, and its agent Turner, violated the covenant of good faith and fair dealing.

75. As a result of said acts, Pray has been damaged in the amount of $1,488,996.47.

### COUNT XV
(Violation of M.G.L. c. 12 § 11(i) vs. Cooper, Kennan, and Turner)

76. Pray restates the allegations contained in paragraph 1 through 7 and 17 through 39 and 52 through 55 and 61 through 63 as if each were set forth fully herein.

77. Cooper and Kennan, through acts of coercion, interfered with Pray's right secured to it by constitution or laws of the United States and the Commonwealth of Massachusetts.

78. Cooper and Kennan used coercion to deprive Pray of its property and liberty interests.

79. As a result of said coercion, Pray has been damaged in the amount of $1,488,996.47.

9

**WHEREFORE, Pray demands that the Court enter judgment in its favor as** follows:

     a)     On Count I, against defendant, the Town of Sunderland, in the amount of $1,488,996.47 together with interest thereon, costs, expenses and reasonable attorney's fees.

     b)     On Count II, against defendant, the Town of Sunderland, in the amount of $1,488,996.47 together with interest thereon, costs, expenses and reasonable attorney's fees.

     c)     On Count III, against defendant, Sara Cooper, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     d)     On Count IV, against defendant, Sara Cooper, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     e)     On Count V, against defendant, Dana Kennan, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     f)     On Count VI, against defendant, Dana Kennan, in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     g)     On Count VII, against defendant, The H.L. Turner Group, Inc., in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     h)     On Count VIII, against defendant, The H.L. Turner Group, Inc., in an amount of $1,488,996.47, together with punitive damages, interest thereon, costs, expenses, and reasonable attorney's fees.

     i)     On Count IX, against defendants, Cooper, Kennan and Turner, individually, and, jointly and severally, in the amount of $1,488,996.47, together with interest thereon, costs, expenses and reasonable attorney's fees.

     j)     On Count X, against defendant Turner:

          a)     In an amount of $1,488,996.47;

b)    In an amount up to treble damages, $4,466,989.20; and

c)    Costs, expenses, and reasonable attorney's fees as set forth in M.G.L. c. 93A.

k)    On Count XI, against defendants, Sunderland, Cooper, Kennan and Turner, individually, and jointly and severally:

a.)    In an amount of $1,488,996.47;

b)    In an amount of up to treble damages, $4,466,989.20; and

c)    Interests, costs, expenses and attorney's fees as provided in 18 U.S.C. §1964(c).

l)    On Count XII, against defendants Sunderland, Cooper and Kennan, individually, and, jointly and severally.

a)    For compensatory damages in the amount of $1,488,996.47 with interest thereon;

b)    For punitive damages in the amount of $4,466,989.20 with interest thereon;

c)    For costs, expenses and attorney's fees in accordance with 42 USC 1988; and

d)    For such other relief as the Court deems appropriate and just.

m)    On Count XIII, against defendants Sunderland, Cooper and Kennan, individually, and, jointly and severally.

a)    For compensatory damages in the amount of $1,488,996.47 with interest thereon;

b)    For punitive damages in the amount of $4,466,989.20 with interest thereon;

c)    For costs, expenses and attorney's fees in accordance with 42 USC 1988; and

d)    For such other relief as the Court deems appropriate and just.

n)    On Count XIV, against defendant Sunderland.

a)    For compensatory damages in the amount of $1,488,996.47 with interest thereon;

b)   For punitive damages in the amount of $4,466,989.20 with interest thereon;

c)   For costs, expenses and attorney's fees; and

d)   For such other relief as the Court deems appropriate and just.

o)   On Count XV, against Cooper, Kennan, and Turner in the amount of $1,488,996.47, together with interest thereon, costs, expenses and attorney's fees.

p)   That the Court grant such other relief as it deems appropriate and just.


## JURY DEMAND

D.F. Pray demands trial by jury on all counts and issues so triable.


D.F. Pray, Inc.,
By its attorneys,

*Edward F. Vena*

Edward F. Vena, BBO #508660
Charles A. Plunkett, BBO #547714
VENA, RILEY, DEPTULA, LLP
250 Summer Street
Boston, MA 02210
Tel: (617) 951-2400

Dated: May 3, 2004

12

**44 § 30**                    **CITIES, TOWNS AND DISTRICTS**

departments shall be credited with their proportion of the income tax received during the preceding fiscal year.

Amended by St.1969, c. 849, § 55.

¹ Repealed.

### Historical and Statutory Notes

St.1917, c. 209.
St.1918, c. 107.

### Cross References

Emergency finance board, borrowing by cities and towns, see c. 44, § 7.

### Library References

Municipal Corporations ⬥890.
WESTLAW Topic No. 268.
C.J.S. Municipal Corporations § 1887.

### Notes of Decisions

In general   1

**1. In general**

Though this section requires appropriation for use of school department of Cambridge of certain proportion of proceeds of tax on incomes, as it does not specify any particular percentage to be applied to the payment of teachers' salaries, the school committee is not required to so apply any part thereof. Hunter v. Quinn (1923) 138 N.E. 382, 244 Mass. 296.

Under St.1917, c. 209, the proportion of the proceeds of the tax on incomes returnable to the commonwealth, pursuant to St.1916 c. 269, to the city of Cambridge for the use of the school or other department, is determined by the aggregate amount of all taxes levied by the local assessors for general purposes under St. 1909, c. 490, pt. I, § 37, and not by the total tax assessed and levied for municipal purposes. Gadsby v. Quinn (1919) 122 N.E. 873, 233 Mass. 6.

In the case of Gadsby v. Quinn (1919) 122 N.E. 873, 233 Mass. 6, the court said: "The petitioners contend that there should be paid and appropriated for the use of the school committee for school purposes $98,662.44, and not $75,031.27, as the respondents contend. They support their contention by the argument that the word 'local' in the phrase 'total local tax levy of that city' is superfluous, and without force and effect unless it refers to the purpose for which the levy is made, and that it cannot refer to the place of levy because the statute expressly provides that it shall be the levy 'of that city.' But we are of opinion that the emphatic word is 'total,' and that it modifies the word 'local' as a part only of the entire phrase that follows."

## § 31.  Liabilities in excess of appropriations forbidden; exceptions

No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council in cities, and each item voted by the town meeting in towns, being considered as a separate appropriation, except in cases of major disaster, including, but not limited to, flood, drought, fire, hurricane, earthquake, storm or other catastrophe, whether natural or otherwise, which poses an immediate threat to the health or safety of persons or property, and then only by a vote in a city of two-thirds of the members of the city council, and in a town by a majority vote of all the selectmen. Payments of liabilities incurred under authority of this section may be made,

264

with the written approval of the director, from any available funds in the treasury, and the amounts of such liabilities incurred shall be reported by the auditor or accountant or other officer having similar duties, or by the treasurer if there be no such officer, to the assessors who shall include the amounts so reported in the aggregate appropriations assessed in the determination of the next subsequent annual tax rate, unless the city or town has appropriated amounts specified to be for such liabilities;  provided, that, if proceedings are brought in accordance with provisions of section fifty-three of chapter forty, no payments shall be made and no amounts shall be certified to the assessors until the termination of such proceedings.  Payments of final judgments and awards or orders of payment approved by the industrial accident board rendered after the fixing of the tax rate for the current fiscal year may, with the approval of the director of accounts if the amount of the judgment or award is over ten thousand dollars, be made from any available funds in the treasury, and the payments so made shall be reported by the auditor or accountant or other officer having similar duties, or by the treasurer if there be no such officer, to the assessors, who shall include the amount so reported in the aggregate appropriations assessed in the determination of the next subsequent annual tax rate, unless the city or town has otherwise made provision therefor.

The provisions of this section, so far as apt, shall apply to districts, and the prudential committee, if any, otherwise the commissioners, shall act in place of the members of the city council or selectmen.

Amended by St.1946, c. 358, § 23;  St.1949, c. 138;  St.1954, c. 46;  St.1955, c. 259;  St.1969, c. 505, § 7;  St.1969, c. 849, § 55A;  St.1971, c. 766, § 14;  St.1973, c. 832;  St.1979, c. 194, § 1;  St.1982, c. 22, § 2;  St.1991, c. 544, § 2.

### Historical and Statutory Notes

St.1913, c. 719, §§ 1, 16.

St.1973, c. 832, approved Sept. 26, 1973, in the first paragraph, in the third sentence, inserted "and awards or orders of payment approved by the industrial accident board".

St.1979, c. 194, § 1, an emergency act, approved May 21, 1979, in the first paragraph, in the third sentence, deleted ", other than judgments authorized under the provisions of section thirty-four of chapter seventy-one," following "fiscal year".

St.1982, c. 22, § 2 approved April 1, 1982, in the first paragraph, in the first sentence, substituted "major disaster, including, but not limited to, flood, drought, fire, hurricane, earthquake, storm or other catastrophe, whether natural or otherwise, which poses an immediate threat to" for "extreme emergency involving".

St.1991, c. 544, § 2, approved Jan. 9, 1992, in the first paragraph, in the third sentence, inserted "if the amount of the judgment or award is over ten thousand dollars".

### Cross References

Applicability of this section to compensation of elected town officers, etc., see c. 41, § 108.
Emergency finance board, borrowing by cities and towns, see c. 44, § 7.
Liability for lawful debts, see c. 44, § 14.
Members of mutual fire companies, see c. 175, § 76.
Services by Massachusetts Bay transportation authority, reimbursement by municipalities, see c. 161A, § 5.

mended annual budget by submitting it to the city council. Young v. City of Worcester (1956) 133 N.E.2d 211.

Rule that estimates from school committee which are to entail required appropriation, whether large and principal or small and supplementary, must all be in municipal executive's hands at time he brings into existence the recommended annual budget by submitting it to city council does not derogate from rights and powers of school committee. Young v. City of Worcester (1956) 133 N.E.2d 211.

In the case of School Committee of Gloucester v. City of Gloucester (1949) 85 N.E.2d 429, 324 Mass. 209, the court said: "The school committee cites numerous cases in which a school committee has been held not to be controlled by various statutes of general application to the municipal government. Among these cases, with the respective statutes held not to apply to a school committee, are Leonard v. School Committee of Springfield, 241 Mass. 325, 135 N.E. 459, and Decatur v. Auditor of Peabody, 251 Mass. 82, 146 N.E. 360, the budget law, G.L. c. 44, § 32, originally enacted as St.1913, c. 719, entitled 'An Act relative to municipal indebtedness'; Callahan v. Woburn, 306 Mass. 265, 270–273, 28 N.E.2d 9, the municipal finance act, G.L. (Ter.Ed.) c. 44, § 31; Davis v. School Committee of Somerville, 307 Mass. 354, 30 N.E.2d 401, G.L. (Ter.Ed.) c. 32, § 37C, paragraph (2), as appearing in St.1938, c. 439, § 2, relating to retirement systems; Ring v. Woburn, 311 Mass. 679, 43 N.E.2d 8, the mu-

nicipal finance act, G.L. (Ter.Ed.) c. 44, § 31; and Hayes v. Brockton, 313 Mass. 641, 48 N.E.2d 683, the budget law, G.L. (Ter.Ed.) c. 44, § 31A, inserted by St.1941, c. 473, § 1."

Where school committee of a municipality approved increase in teachers' salaries and the estimates as prepared by the committee and submitted to mayor and city council provided for increase in stated amount, action by the committee was effective, and city was bound to comply with estimates of the committee for salaries of the teachers. O'Brien v. City of Pittsfield (1944) 55 N.E.2d 440, 316 Mass. 283.

A school committee acting under statute relating to public schools is not controlled by statute relating to time for furnishing detailed estimates to the mayor and city auditor when presenting to the mayor committee's estimates of sums which the city is required to furnish to support public schools. Hayes v. City of Brockton (1943) 48 N.E.2d 683, 313 Mass. 641.

Where school committee's failure to file estimates before December 5, 1941, did not cause inconvenience and new mayor taking office January 5, 1942, had the estimates in hand before commencement of period within which he was required to present the budget to the city council, and the mayor dealt with and council acted upon the estimates, the delay did not relieve city from liability to appropriate the estimated funds. Hayes v. City of Brockton (1943) 48 N.E.2d 683, 313 Mass. 641.

## § 31B. Repealed by St.1969, c. 505, § 6

### Historical and Statutory Notes

St.1969, c. 505 § 6, repealing this section, was approved July 11, 1969.

The repealed section, derived from St.1950, c. 173, related to liabilities not to be incurred by certain districts.

See c. 44, § 31.

## § 31C. Construction contracts; certificate as to availability of funds; effect of certificate upon defense of insufficiency of appropriations

No contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public work by any city or town costing more than two thousand dollars shall be deemed to have been made until the auditor or accountant or other officer of the city or town having similar duties has certified thereon that an appropriation in the amount of such contract is available therefor and that an officer or agent of the city, town or awarding authority has been authorized to execute said contract and approve all requisitions and change orders. No order to the contractor for a change in addition to the work to be performed under a contract subject to this section, whether in the form of a drawing, plan, detail or any other written instruction,

**44 § 31C**                          **CITIES, TOWNS AND DISTRICTS**

unless it is an order which the contractor is willing to perform without any increase in the contract price, shall be deemed to have been given until the auditor or accountant, or other officer of the city or town having similar duties, has certified thereon that an appropriation in the amount of such order is available therefor; but such certificate shall not be construed as an admission by the city or town of its liability to pay for such work. The certificate of the auditor or accountant or other officer of the city or town having similar duties, that an appropriation in the amount of such contract or order is available shall bar any defense by the city or town on the grounds of insufficient appropriation; and any law barring payment in excess of appropriations shall not apply to amounts covered by any certificate under this section.

Added by St.1964, c. 693, § 1.   Amended by St.1986, c. 447; St.1989, c. 341, § 27.

### Historical and Statutory Notes

St.1986, c. 447, approved Oct. 16, 1986, in the first sentence, added, "and that an officer or agent of the city, town or awarding authority has been authorized to execute said contract and approve all requisitions and change orders".

St.1989, c. 341, § 27, an emergency act, approved Aug. 15, 1989, in the third sentence, deleted "the" preceding "amounts covered".

### Library References

Municipal Corporations ⟨⟩326, 888.
WESTLAW Topic No. 268.
C.J.S. Municipal Corporations §§ 1142, 1882.

### Notes of Decisions

In general   1
Certification   3
Purpose of law   2

#### 1. In general

Where there was an appropriation for services rendered by architect, architect's recovery was not barred by fact that city council had not approved money for the work at the time the contract with the architect was entered into. Turiello v. City of Revere (1983) 443 N.E.2d 1357, 15 Mass.App. 185, review denied 448 N.E.2d 766, 388 Mass. 1105.

#### 2. Purpose of law

Purpose of statute requiring auditor to certify appropriation when amount of contract for public works contract exceeds $2,000 is to provide central municipal control over irresponsible municipal spending. Reynolds Bros., Inc. v. Town of Norwood (1993) 609 N.E.2d 58, 414 Mass. 295.

Purpose of this section requiring that a certification of city auditor or other official, stating that an appropriation covering amount of a municipal contract is available therefor, appear on contract before it shall be deemed to have

been made was to provide contractors with a ready and reliable means of ascertaining that there was an appropriation sufficient to cover the proposed work and to protect them where a contract carries a certification that there exists a sufficient appropriation but no such appropriation exists. City of Lawrence v. Falzarano (1980) 402 N.E.2d 1017, 380 Mass. 18.

#### 3. Certification

Contract for construction of municipal airport was valid, even though auditor did not certify that appropriation in amount of contract was available, since purpose of statute requiring certification is to protect contractors. Reynolds Bros., Inc. v. Town of Norwood (1993) 609 N.E.2d 58, 414 Mass. 295.

Failure of town accountant to certify availability of funds does not necessarily render public construction contract invalid, particularly where result would frustrate purpose of certification statute. Reynolds Bros., Inc. v. Town of Norwood (1992) 584 N.E.2d 1142, 32 Mass. App.Ct. 901, affirmed in part, reversed in part on other grounds 609 N.E.2d 58, 414 Mass. 295.

Town's contract for reconstruction of airport was valid, even though statute which required certification as to availability of funds was not

278

2.10-3  -Form F – Financial Plan                                                    Page 1 of 2

## SCHOOL BUILDING ASSISTANCE

## MAJOR REPAIRS PROJECT APPLICATION

School District_____**Sunderland School District**_____Code_____

School Building_____**Sunderland Elementary School**_____Code_____

Check below each "TYPE OF PROJECT" for which dollar amounts are included on this Form F.

A. Safety _√___    B. Accessibility ____    C. Roof _√___    D. HVAC _√___    E. Energy _√___

## A. COST ESTIMATES ELEMENTS

|   |   |   |
|---|---|---|
| 1.0 General Contractor | $ **3,165,000** | ( **77** %) |
| 2.0 Architect Fees | $ **245,000** | ( **6** %) |
| 3.0 Other (itemize on next page) | $ **690,000** | ( **17** %) |
| **TOTAL** | $ **4,100,000** | (100%) |

*3,650,000*  *LESS: 450,000 FIRE SUPPRESSION & Civil/Site work. Bond Schedule Changed Sept 2000 rd*

## B. METHOD OF FINANCING ELEMENTS

|   |   |
|---|---|
| 1.0 Taxation | $_____ |
| 2.0 Bonds/Notes | $ **4,100,000** |
| 3.0 Building Fund | $_____ |
| 4.0 Stabilization Fund | $_____ |
| 5.0 Other - State | $_____ |
| 6.0 Other - Federal | $_____ |
| 7.0 Other (itemize) | $_____ |
| **TOTAL** | $_____ |

C. Estimated Interest on Bonds/Notes          $ **1,722,000**
    (based on equal principle

For Bonds/Notes: Interest Rate (est.)____**4%**___;Term__**20**___years; Date of issue_____

**(Attach a Bond Schedule)**

*cc TF*
*TIC*
*SB*
*DK*

| Edit Document | Comment | Design Team Determination |

# The H. L. Turner Group Inc.

27 Locke Road
Concord, NH 03301

phone: (603) 228-1122
fax: (603) 228-1126

**Project Phase:** Construction and Bidding

## Electronic Format

| PROJECT: | | |
|---|---|---|
| Sunderland Emergency School Reconstruction Sunderland, MA | **Directive No:** | **29** |
| | **Date:** | 09/19/2003 |
| | **Architect's Project No:** | 2623 |
| **OWNER:** Town of Sunderland 12 School Street, Sunderland, MA 01375 | **Contract for:** | CM |
| | **Contract dated:** | 07/01/2003 |
| **TO CONTRACTOR:** | **Summary of Changes:** | **Reconcile Accounting** |

**You are hereby directed to make the following change(s) in this Contract:**
Per Architect's Project Accounting spreadsheet dated 9/17/03, 2 pages, and as discussed with Owner, Architect and CM 9/13/03...

All items identified in italics and with shading as work that has been performed, is being performed, or is likely to be performed as additional work...

Sum total of GMP scope and all additional work not to exceed $3,953,858 and time for substantial completion of the entire project to be on or before October 13, 2003....

Pending CM submittal of documentation, Architect review for confirmation of scope, value, and duration of the work and Owner approval of the proposed reconciliation.

**Proposed Adjustments**
1. The proposed basis of adjustment to the Contract Sum or Guaranteed Maximum Price is:
**To be determined** .

2. The Contract Time is proposed to **be determined**.
The proposed adjustment is **not to exceed the amount and time as defined above**.

| |
|---|
| When signed by the Owner and Architect and received by the Contractor, this document becomes effective IMMEDIATELY as a Construction Change Directive (CCD), and the Contractor shall proceed with the change(s) described above. |

| Architect: | Owner: | Contractor: |
|---|---|---|
| The H. L. Turner Group, Inc. 27 Locke Road Concord, NH 03301 | Town of Sunderland 12 School Street, Sunderland, MA 01375 | |
| | | By:_____ Date:_____ |
| By:_____ Date:_____ | By:_____ Date:_____ | |

**S00828**

Sep 19 03 05:42p                                                                P. 1

Fax Cover Sheet: CCD to reconcile project accounting        Page 1 of 1



[ ✎ Edit Document ]  [ ✐ Comment ]  [ ▓ Design Team Determination ]

# The H. L. Turner Group Inc.

27 Locke Road                                          phone: (603) 228-1122
Concord, NH 03301                                        fax: (603) 228-1126

**TO:**        Dana Kennan            **FROM:**      Loren Belida
**Company:**                                         The H. L. Turner Group Inc.
**Address:**                                         27 Locke Road
                                                     Concord, NH 03301
**Fax #:**     413-665-1446           **Fax #:**     (603) 228-1126
**Phone #:**                          **Phone #:**   (603) 228-1122
**Date:**      09/19/2003             **Time:**      05:34 PM
**# of PAGES including COVER: 2**

For your information

**PROJECT Name:** Sunderland Emergency School Reconstruction **PROJECT No.:** 2623

**SUBJECT:** CCD to reconcile project accounting
**COMMENTS:**
Attached as discussed

**CC:**

▶ Editors & Dates:

SEP 22 2003

S00827

"E"



**Thursday, September 18, 2003**

| Sent via Fax and USPS Certified Mail | # 7000-1530-0005-9597-9967 |
|---|---|

Town of Sunderland
12 School Street
Sunderland, MA 01375
Attn: Dana Kennan, Town Administrator

PH: 413-665-1441 FX: 413-665-1446

RE:      Continued Notice of Insufficient Funds
         Additional Request for Certification of Funds

PROJECT:     Sunderland Elementary School
             27 Old Amherst Road
             Sunderland, MA 01375

*SEP 22 2003*

Dear Dana:

This follows our letter of September 8, 2003, to which we have not received a response from the Town, and our prior notices and requests to the Town for proper certification of funds for our contract as required by M.G.L. c. 44, Sec. 31C.

As we have repeatedly discussed, we are perplexed by the Town's delay in providing the required certification. We have been informed by Town officials and the Architect that the Town has sufficient appropriated funds allocated to our contract to cover the currently assessed value of $3,953,858. We again request that the Town Accountant provide a certification to that effect so we may be assured that the work can proceed without interruption. In addition to this certification, we will continue to require a properly executed Change Order or Construction Change Directive signed by the Town and certified by the Town Accountant before we can proceed with any extra work.

We anxiously await your reply. Please advise.

Very Truly Yours,

Ronald H. Laprise, Jr.
Vice President

cc:     File: 700, 01000, Receipts
        Scott W. Pray, President
        Loren Belida, AIA, H.L. Turner Group
        Paul James, Holland & Knight LLP

*Building*

*Excellen*

*Since 1*

**S00831**

25 ANTHONY STREET  SEEKONK, MA 02771  TEL 508-336-3366 x. 133  FAX 508-336-0551  WWW.DFPRAY.COM

O:\Ron\ALL PROJECTS\700 SUNDERLAND ELEMENTARY\700CORRESPONDENCE\700 TOWN OF SUNDERLAND\700 FOllowUp
to Sept8lttr 09-18-03.doc



**TURNER GROUP**

# THE H.L. TURNER GROUP Inc.

27 LOCKE ROAD, CONCORD, NH 03301-5301 TELEPHONE: 603-228-1122 FAX: 603-228-1126

September 16, 2003

Ronald H. Laprise, Vice President
DF Pray General Contractors
25 Anthony Street
Seekonk, MA 02771

RE: Sunderland Elementary School Emergency Work
**Project Accounting**

Dear Mr. Laprise,

Please find attached copies of the Architect's latest spreadsheets of accounting for the construction GMP and proposed changes. The highest sum total, including all funds that DF Pray has asserted that they are due, is $3,953,858. This amount is well within the Owner's currently available project funds of $4,308,143. The Owner will pay other project expenses from a combination of the above funds, other Town funds and School District funds.

Please proceed with the remaining project work, including additional work, and provide all required supporting documentation for our review as soon as possible.

Sincerely,

Loren M. Belida, AIA
Senior Vice President Architecture

CC: Dana Kennan
Attachments

ARCHITECTS • ENGINEERS • BUILDING SCIENTISTS • CONSTRUCTION MANAGERS

# TOWN ACCOUNTANT



**TOWN OF SUNDERLAND MASSACHUSETTS**
Town Offices: 12 School Street
Sunderland, MA 01375          PHONE: (413) 665-1443
                              FAX: (413) 665-1446

September 19, 2003

Scott Pray, President
D.F. Pray
General Contractors
25 Anthony Street
Seekonk, MA 02771

Dear Mr. Pray:

After review of the architect's latest spreadsheets of accounting for the construction of GMP, proposed changes indicate that the highest sum total of construction costs, including all funds that DF Pray has asserted that they are due, and pending the Architect's confirmation of justification of additional work and costs, is $3,953,858. The amount is well within the Owner's currently available project funds of $4,269,000. The owner will disburse other project expenses from a combination of the above funds, other Town funds and School district funds.

Please proceed with the remaining project work, including additional work, and provide all required supporting documentation for our review and confirmation of actual values of all work as soon as possible.

Sincerely,

Sara Cooper

Sara Cooper
Town Accountant

Cc:    Loren Belida, The H.L. Turner Group
       Board of Selectmen

DWK/cab

| Home | Town Clerk |        Town of Sunderland, Massachusetts

# Town Meeting Action

### Special Town Meeting, April 30, 2004

### Annual Town Meeting, April 30, 2004

**2004 SPECIAL TOWN MEETING**
**COMMONWEALTH OF MASSACHUSETTS**
**TOWN OF SUNDERLAND**
**APRIL 30, 2004**
**SUNDERLAND ELEMENTARY SCHOOL**

Moderator, Robert T. Duby called the meeting to order at 7:10pm. Town Clerk, Wendy Houle, read the Constables Return and swore in tellers: Bruce Bennett, Peter Gagarin, Brenda Russo, and Lorin Starr.

Motion to recess Special Town Meeting at 7:30pm, Seconded, Passed unanimously.
Motion to reopen Special Town Meeting, seconded, passed unanimously.
Motion to dissolve meeting at 7:42pm, seconded, passed unanimously.

ARTICLE 1: I move that the Town vote to transfer from the Foundation Reserve Fund the sum of $103.32 due to Hampshire Educational Collaborative; $85.00 due to Severn Trent Laboratories; and $57.64 due to FRCOG for the sum total of $245.96 for FY03 unpaid bills.
    *REQUIRES 9/10th VOTE    Chapter 44 Section 64

**Seconded**                              **Passed**                              **Unanimous**

ARTICLE 2: I move that the Town vote to borrow, under the provisions of c. 44 §7 ¶ 3A the sum of $475,000.00 to rehabilitate, reconstruct, construct and otherwise repair the Sunderland Elementary School.
    *REQUIRES 2/3rds VOTE    Chapter 44 Section 7 para 3A

**Seconded**                              **Passed**                              **Unanimous**

ARTICLE 3: I move that the Town vote to transfer from the Foundation Reserve Fund the sum of $4,600.00 for Additional Elementary School Bus Transportation September, October and November of Academic 04 (FY 04) for transporting students to Frontier Regional School in Deerfield and Whately Elementary in Whately.

**Seconded**                              **Passed**                              **Unanimous**