Exhibit "B"



Friday, October 29, 2004

Vena, Riley, Deptula, LLP
250 Summer Street
Boston , MA 02210
**Attention: Edward F. Vena , Esq. , Attorney**
Phone:  (617) 951-2400 (    )     Fax:    (617) 951-2420

RE:   Notes Fax of October 29, 2004

PROJECT:  Sunderland Elementary School

Dear Edward F. Vena,

We are in receipt of your Notes relevant to the Sunderland project and thank you.
We would also respectfully request copies of the smoking gun letters that we have
spoken of in the past wherein H.L. Turner Group's Loren Belida wrote to Dana Kinnon or
the Town Building Committee Chair, Mr. Thomas Fightenkevitz, stating lack of funds
and additional amounts due D.F. Pray, Inc.

Ed,  Mr. Pray and myself share the utmost sympathy for you in these trying times.
Please know if there is anything we can do to support you we stand ready, thank you
again and take care.

If you have any questions or we can be of any further assistance,
please do not hesitate to call.

Very Truly Yours,

Ronald H. Laprise , Jr.
Vice President

CC to:   File: 700 , 01000 , Receipts

*Building*

*Excellence*

*Since 1959*

Exhibit "C"

# VENA, RILEY, DEPTULA, LLP

### 250 SUMMER STREET
### BOSTON, MA 02210
### (617)951-2400 TELEPHONE
### (617)951-2420 FACSIMILE

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** RONALD LAPRISE, JR. | **FROM:** EDWARD F. VENA |
| **COMPANY:** D.F. PRAY | **DATE:** NOVEMBER 5, 2004 |
| **FAX NUMBER:** (508) 336-0551 | **TOTAL NO. OF PAGES INCLUDING COVER:** 11 |
| **RE:** | **OUR REFERENCE NO.:** 457 |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

## MESSAGE:

**RON, HERE IS SOME ADDITIONAL CORRESPONDENCE. THE SO-CALLED "SMOKING GUN" LETTER – 3/6/04 – HAS A LOT OF COLLATERAL <u>POSTURING</u> ABOUT PRAY OVERBILLING.**

● **COMMENTS:** If you experience any problems with this transmission, or do not receive all pages, please call (617)951-2400. This telecopy is attorney client privileged and contains confidential information intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify this office immediately by telephone, and return the original transmission to us by mail without making a copy.

```
          *********************
      ***    TX REPORT    ***
          *********************

      TRANSMISSION OK

      TX/RX NO             4538
      CONNECTION TEL                  15083360551
      CONNECTION ID
      ST. TIME             11/05 11:39
      USAGE T              01'46
      PGS. SENT             11
      RESULT               OK
```

# VENA, RILEY, DEPTULA, LLP
## 250 SUMMER STREET
## BOSTON, MA 02210
## (617)951-2400 TELEPHONE
## (617)951-2420 FACSIMILE

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| RONALD LAPRISE, JR. | EDWARD F. VENA |

| COMPANY: | DATE: |
|---|---|
| D.F. PRAY | NOVEMBER 5, 2004 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| (508) 336-0551 | 2 |

| RE: | OUR REFERENCE NO.: |
|---|---|
| | 457 |

---

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

---

MESSAGE:

RON, HERE IS SOME ADDITIONAL CORRESPONDENCE. THE SO-CALLED "SMOKING GUN" LETTER – 3/6/04 – HAS A LOT OF COLLATERAL POSTURING ABOUT PRAY OVERBILLING.

• COMMENTS: If you experience any problems with this transmission, or do not receive all

MAR-15-2004 MON 03:58 PM  D F PRAY                    ☎5083360551                    P. 001/003



# Transmittal

### Monday, March 15, 2004   No. 700 - 01000 - 029

## Project: Sunderland Elementary School

To:

Town Of Sunderland
12 School Street
Sunderland , MA  01375
**Attention:  Dana  Kennan , Town Administrator**

Phone: (413) 665-1441 (     )     Fax:   (413) 665-1446

*Letter Missing page when orig # was Rec'd on 3/18 ~~3/19~~ D F pray caled to rept correction* 

We are sending you via:  **Fax / USPS**

Tracking/Airbill #:

| Copies | Item-Description | Notes |
|--------|------------------|-------|
| 1 | Correspondence - Settlement Meeting | For your use |

CC to:
**File: 700 , 01000 , Receipts**
Paul  James , Holland & Knight LLP

**Signed: Ronald H. Laprise, Vice President**

*Building*
*Excellenc*
*Since 195*

25 ANTHONY STREET      SEEKONK, MA 02771    TEL 508-336-3366     FAX 508-336-3384   WWW.DFPRAY.COM

S01325



Thursday, March 11, 2004

Town Of Sunderland
12 School Street
Sunderland , MA 01375
**Attention:  Dana  Kennan , Town Administrator**

Phone:  (413) 665-1441      Fax:    (413) 665-1446


RE:          Settlement Meeting

PROJECT:    Sunderland Elementary School

Dear Dana  Kennan,

In closing our meeting of Friday, March 5th, 2004, we were hopeful that a settlement agreement was pending. However, after today's phone conversation we no longer feel that this is an achievable goal and was in fact no more than another delay tactic. This decision is based on the following as discussed via phone conference on Tuesday, March 9th, 2004:

By your verbal statement the Town of Sunderland does not have the appropriate funds to pay D.F. Pray for the amount that the architect has declared to be due D.F. Pray irregardless of our position or disputes in this matter.

Beyond an available $170,000.00 the best case scenario for our next payment would be a May 2004 payment and a worst case scenario of an October 2004 payment.

The architect and Town have deducted a disputed amount identifiable as a "Deductive Change Order" on our requisition for the full value of $342,828.00 for work removed from our contract, but has failed to pay us for the amounts the architect feels is owed on all CCD's "Construction Change Directive" under the same disputes.

We can not understand the lack of finances when in fact we were issued CCD #29 which clearly states "Sum Total of GMP scope and all additional work not to exceed $3,953,858.00." This sum does not include an additional 26 CCD's issued after "29" for an approximate additional $50,000.00 plus.

*Building*
*Excellen*
*Since 19.*

We spent an enormous amount of time and monies duplicating two (2) copies of 259 Proposed Change Orders applicable to the CCD's and GMP on this project and are now being asked to go through this exercise again with the understanding that they may have been left out and discarded. Again, in our opinion, this is nothing more

S01326

MAR-15-2004 MON 03:59 PM  D F PRAY                                    5083360551              P. 003/003

**D. F. Pray**

In closing, during the construction we did not make excuses why things could not get done, nor did we not spend a great deal of our working capitol on an enormous amount of Labor and Materials that could not wait to be paid in 3 to 6 months, rather we worked diligently and pushed the project to completion and met all the constantly added requirements of the building inspector and got the kids back to their own school, now only to be continually delayed in being paid monies owed is not fair, reasonable or otherwise.

If you have any questions or we can be of any further assistance, please do not hesitate to call.

Very Truly Yours,

Ronald H. Laprise , Jr.
Vice President

CC to:  File: 700 , 01000 , Receipts
        Paul James , Holland & Knight LLP

*Building*
*Excellenc*
*Since 195*

S01327

September 21, 2003

Erik Wight
Building Inspector



SEP 22 2003

Dear Eric,

The Finance Committee would like a copy of your listing of possible costs of the Elementary School repair that you presented to the Town Meeting in April.

We remember that you made some best guesses of what it would take that resulted in a $4.1 million town article.

We wish to be able to explain that the additional money in the upcoming town meeting was not in the original estimates and  that we would not expect it to have been.

Please place a copy of the estimate breakdown in the Finance Committee mail box by Wednesday 9/24.

Thanks

Richard Lopatka
Finance Committee

S00834

| TURNER GROUP | The H. L. Turner Group Inc. |
|---|---|

☒ 27 Locke Road, Concord, NH 03301 (603) 228-1122
☐ 26 Pinewood Ln, Harrison, ME 04040 (207) 583-4571
☐ PO Box 89, Rt. 2 Danville, VT 05828 (802) 684-2134
☐ PO Box 653, Londonderry, VT 05148 (802) 824-5616

# FAX COVER SHEET

| TO: | **Dana Kennan** | FROM: | **Loren Belida, Senior VP** |
|---|---|---|---|
| | **Town Administrator** | | **The H.L. Turner Group Inc.** |
| | | | **Concord, NH** |
| FAX#: | **413-665-1446** | FAX #: | **603-228-1126** |

# PAGES W/COVER    **6**    DATE:    **March 6, 2004**    TIME:    **1:04 PM**

SUBJECT:    **Elementary School Project Completion**

☐ URGENT
☐ As you requested

☐ Please Reply
☒ For your information

**COMMENTS:**

**Revised draft letter as discussed Friday, for Selectmen's review.**

S01290

March 6, 2004

Ron Laprise
DF Pray General Contractors
25 Anthony Street
Seekonk, MA 02771



RE: Sunderland Elementary School **Project Completion**

Dear Ron,

There are many items outstanding that must be addressed to bring the project to closure. They may generally be categorized as:

1. Establish final Guaranteed Maximum Price
2. Closeout punch list with monetary value credit for items outstanding
3. Develop a change order incorporating both of the above
4. Confirm scope and value of changes in the work
5. Develop a change order to close out the above
6. Establish a value for final requisition
7. Closeout liquidated damages/general conditions and CM fee
8. Additional corrective work

**We are recommending the following for the Owner's consideration for acceptance of final completion of the project.**

1. **Establish final GMP** ~ I can not help but note the irony that there never was a true guaranteed maximum price for the project with all of the open "allowance" items. As such, the Owner was at risk for uncontrolled costs. The most blatant example of misuse of this mechanism is the line item for "vinyl siding, wall insulation and metal trim". The value for the wall insulation component was initially established, by mutual agreement of the Architect and the CM, as $77,000. The final costs are over $190,000. In our observation of daily activities, carpenters were assigned to this work when no other work was readily available or to finish out a day, thus working very inefficiently. However, as you have submitted backup for the costs, we have included these, as submitted, in the final analysis. There have also been several work items removed from the construction contract as work performed by the Owner in total amount of ($342,838). Our final analysis indicates a net overall increase in the GMP for "base contract work" of $140,234, plus the 6.5% CM Fee of $9,115 on the differential, equals an **increase of $149,349**. This value is incorporated in Change Order #1.

S01291

**2. Closeout Punch List** ~ There has not been any activity towards completion of the punch list work by the CM in quite some time. We have gone through and deleted items that have been completed of that we agree are not the CM's responsibility. The remaining outstanding work is summarized as:

| | |
|---|---|
| Closeout | $2,000 |
| Civil | $2,700 |
| Structural | $0 |
| Interior | $5,900 |
| Exterior | $0 |
| Mechanical | $7,750 |
| Plumbing | $0 |
| Fire Protection | $0 |
| Electrical | $1,200 |
| **TOTAL** | **$19,550** |

This value will be withheld as retainage and will result in a deduct Change Order in the amount of ($20,000). if the work is not performed satisfactorily at the conclusion of all other project activities.

**3. Develop a Change Order for the above** ~ Change Order #1 is written in the amount of a net increase to the GMP of $149,349. If the project were to close out today, Change Order #3 would be written in the amount of ($20,000).

**4. Confirm scope and value of changes in the work** ~ We have spent countless hours reviewing CCDs, materials invoices, labor accounting summaries, etc. There are two provisions in the Contract that we are recommending some leniency on strict implementation:

1. Each CCD was written with the intent of establishing a "not to exceed" value of the work, pending receipt of documentation of material and labor unit costs and quantities for confirmation to establish the actual amount. Many items have been approved, even though complete detailed backup has not been provided. For some items, the final documentation indicated greater costs were incurred than initially authorized. Considering the frenetic pace of the project, we are recommending suspending the contract requirement of "not-to-exceed" to recognize the actual cost, on a case-by-case basis, as indicated on the accounting spreadsheet.

2. Most additional work was authorized by a CCD. However, there were some items that were not documented in writing, but that we do recall discussing and verbally confirming that the work was required and it was outside of the project scope. Again, considering the frenetic pace of the project, we are

recommending suspending the contract requirement of written authorization, for seven items only, as indicated on the accounting spreadsheet.

You have prepared proposed change orders for many items of work that were not previously authorized in writing. **We do not recommend consideration of compensation for work items not previously authorized by any means as additional work**, per the terms of the Addendum to the Standard Form of Agreement Between Owner and Construction Manager, Article 14.2:

> "Change Orders and Claims for Extra Work
>
> **No changes in the work covered by the approved Contract Documents shall be made without prior written approval of the Owner.  If the Construction Manager wishes to make a claim for an increase in the Contract Sum, he shall give the Owner written notice thereof within twenty days after the occurrence of the event giving rise to such claim.  This notice shall be given by the Construction Manager before proceeding to execute the Work, except in an emergency endangering life or property.  No such claim shall be valid unless so made.  *Any change in the Contract Sum* resulting from such claim shall be authorized by Change Order."**

5. **Develop a Change Order to close out the above** ~ **Change Order #2 is written in the amount of a net increase to the GMP of $333,455.**

6. **Establish a value for a final requisition** ~ The requisitions recently received on March 1, with a total completed value of **$4,751,540.36, must be for a different project !** If they are for this one, they are absurd ! Of course, we can not certify such applications. The original contract sum value is incorrect. The amount of previous certificates for payment is incorrect. Also, there is no current agreement on change orders. Please resubmit applications #6 and #7 to reflect the actual project accounting as follows:

**Application #6**

| | |
|---|---|
| Original Contract Sum | $3,165,000. |
| Net Change by Change Orders | $          0. |
| Contract Sum to Date | $3,165,000. |
| Retainage | $    20,000. |
| Total Earned Less Retainage | $3,145,000. |
| Less Previous Certificates ... | $3,064,138.65 |
| **Current Payment Due** | **$    80,861.35** |
| Balance to Finish | $    20,000. |

Please return the signed change orders and your revised applications and certifications for payment for my review and approval. Assuming agreement on all change orders, #1 - 4,

including the change order for outstanding punch list work and the change order referenced in Article 7 below, the final requisition should be submitted as follows:

**Application #7 (final)**

| | |
|---|---|
| Original Contract Sum | $3,165,000. |
| Net Change by Change Orders | $   462,804. |
| Contract Sum (final) | **$3,627,804.** |
| Retainage | $        0. |
| Total Earned Less Retainage | $3,627,804. |
| Less Previous Certificates ... | $3,145,000. |
| **Current Payment Due** | **$   482,804.** |
| Balance to Finish | $        0. |

7. **Closeout Liquidated Damages/General Conditions and CM fee** ~ There are compelling arguments for both the Owner to assess liquidated damages for each day that the project has been/is not complete, as well as the CM to submit for additional costs of administering the contract beyond the defined dates of substantial completion on August 22, 2003 and final completion within 45 days thereafter.

From the Owner's perspective, the project was delayed due to:

- o   The CM's inability to staff the project through their exclusive union relationship for several weeks. (This arrangement has already resulted in undue additional costs to the Owner within the GMP).
- o   The project was further set back by the CM's ineffective weather protection and resultant severe damage to the building that required several weeks to repair.
- o   Once the decision was made by the Owner not to partially occupy the building, work by the CM tapered off to a skeleton crew for several weeks.

The project was finally considered substantially complete on November 13, 2003 – nearly 12 weeks after the contract completion date. Final completion still has not been established. Liquidated damages currently amount to more than $150,000 and are continuing to be assessed at $1,000 per day until the project is considered finally complete. The Owner has also incurred substantial additional costs due to the project delay, including transportation, architect's fees, personnel issues, etc, not to mention the adverse effects on the quality of education.

From the CM's perspective, you believe that the project was delayed due to:

- o   Unanticipated inclusion of the Kindergarten Wing "total roof demolition" alternate (even though it was included in the signed contract)
- o   Excessive building inspector requirements
- o   Changes in the work
- o   Inclement weather

S01294

Ron Laprise March 6, 2004.doc

4

You have been including a "below the line" cost in your applications for payment in the amount of nearly $150,000 for additional general requirements and management fees. This amount is apparently based on a generic monthly cost assessment and does not reflect a breakdown of the actual costs, as has been requested by the Architect many times. You may be considering submittal of PCOs for even more additional costs.

There is no doubt that both the Owner and CM have suffered by the extended time for the completion of the Contract. Each can likely match the other, item for item, until both parties owe each other untold sums. Rather than expend a huge amount of effort on something that will likely result an a net gain of a minimal amount to whichever party can amass the most paperwork, I am recommending a change order for the net amount of $0 to reconcile all of the above. **Change Order #4 will be written in the amount of 0$ with an extension of contract time for substantial completion to November 13, 2003 and final completion to March 31, 2004.**

**8. Additional corrective work** ~ Construction related deficiencies are being reported by the Owner as recently occurring or observed, including:

- Excessive roof drainage on walkway at new Library egress door
- No electrical power to Gym water cooler
- Excessive settlement of walkways
- Security system ~ much of the existing system was removed during the demolition procedures. The Owner's alarm system contractor is performing the repair work. Invoices to date total almost $12,000. A portion of the replacement value ($5,000) has been assessed to the punch list.

The Town Administrator will maintain a running list of complaints and transmit the list to our respective offices periodically. These are considered warranty items. As such, we expect that you will respond promptly and correct these deficiencies satisfactorily.

**We look forward to successful final completion of this very challenging project.**

Sincerely,
THE H.L. TURNER GROUP INC.

Loren Belida, AIA
Senior Vice President Architecture

S01295

Ron Laprise March 6, 2004.doc

5

Exhibit "D"

**Sabatino Leo**

| | |
|---|---|
| **From:** | Ron Laprise [rlaprise@dfpray.com] |
| **Sent:** | Thursday, January 20, 2005 10:21 AM |
| **To:** | Sabatino F. Leo |
| **Cc:** | Scott Pray; Louis Santilli |
| **Subject:** | RE: Sunderland Mediation |

Sam,

As a follow up to my phone conversation with Ed this morning, it is imperative that we have Jack Spignase as our mediator, this can not slip through the cracks and Ed has assured me that this will happen. I am certain that Ed will inform you of this, but I want to ensure all are in tune with each other. Thanks.


Very Truly Yours,



Ronald H. Laprise Jr.
Vice President
D.F. Pray, Inc.
508-336-3366 x135
Fax: 508-336-0551
rlaprise@dfpray.com

-----Original Message-----
**From:** Sabatino F. Leo [mailto:sleo@vrdllp.com]
**Sent:** Monday, January 17, 2005 2:43 PM
**To:** Ron Laprise
**Subject:** Sunderland Mediation

Ron,
Ed wanted me to let you know that he spoke with Tom McEnaney on the Sunderland mediation and Tom has indicated the Town will agree to mediation though the committee will be meeting this week to officially vote on it. We should be able to talk to the mediator late this week and early next week. I will keep you informed.
Thanks,
Sam

Sabatino F. Leo
Vena, Riley, Deptula, LLP
250 Summer Street, 2nd Floor
Boston, MA 02210
(tel) 617-951-2400
(fax) 617-951-2420


This email, and any attachments, may be attorney client privileged or otherwise protected from

unauthorized disclosure or use and may contain confidential information intended only for the proper recipient. Any other distribution or disclosure is unintended and does not constitute a waiver of any privilege or of any other protection from unauthorized dissemination, use, or disclosure of the information. If you have received this email in error, please notify this office immediately by telephone, and delete the original transmission without making a copy or forwarding to anyone.

Exhibit "E"



# Transmittal

### Wednesday, February 16, 2005    No. 700 - 01000 - 143

## Project: Sunderland Elementary School

To: Spignesi Law

Boston , MA  02111

**Attention:  Jack  Spignesi ,**

Phone: (999) 999-9999 (   )     Fax:  (978) 470-0273

We are sending you via:  **Fax / UPS Ground**

Tracking/Airbill #: **1Z 0RA 007 03 7525 4678**

| Copies | Item-Description | Notes |
|--------|-----------------|-------|
| 1 | Check - Mediation Agreement and DF Pray Check No. 35433 | Please Find Attached |

CC to: File: 700 , 01000 , Legal

Sabatino F. Leo , Vena, Riley, Deptula, LLP

**Signed: Christine  Chimera, Project Expeditor**

25 ANTHONY STREET     SEEKONK, MA 02771     TEL:(508) 336-3366     FAX:(508) 336-3384

*Building*

*Excellence*

*Since 1959*

# MEDIATION AGREEMENT

This mediation agreement entered into this _____ day of April, 2005 between D. F. Pray, Inc. and the Town of Sunderland arises from and relates to the matters at issue in a pending lawsuit between the Parties known as U. S. District Court No. 04-11073MLW.

## Purpose

The purpose of the mediation is to attempt to arrive at a mutually acceptable resolution of the disputes between the Parties in a cooperative and informal, rather than a legal and formal, manner.

## Mediation Process

The parties have requested John J. Spignesi, Esquire, to serve as the mediator and agree to compensate him at the rate of $225.00 per hour which shall be shared equally between the Parties unless they otherwise agree. The Mediator may (a) review written information submitted by the Parties; (b) conduct private, confidential conversations with the participants to develop information about the Parties' contentions and objectives; and (c) conduct a mediation session with representatives of the Parties and their counsel.

To facilitate a resolution, the Mediator and the Parties and their counsel will work to ensure that each Party appreciates the strengths and weaknesses of each side's factual and legal arguments. Both in the exchange of information and opinions, and in the evaluation of that information, each Party will have the opportunity and responsibility to candidly disclose to the Mediator the facts, theories, and opinions on which it intends to rely concerning the matters in dispute.

In addition, the mediation process will focus on the interests and objectives of the Parties and possible solutions that the Parties believe would be fair, equitable, and mutually beneficial. Accordingly, each Party will be asked to work with the Mediator in considering and evaluating solutions that would satisfy its own interests and those of the other Parties.

**The mediation session will be attended by representatives of the Parties with full settlement authority.** The Parties will follow the recommendation of the Mediator regarding the agenda most likely to resolve the dispute. During the session, the Mediator may have joint and separate meetings with the Parties and their counsel. If a Party informs the Mediator that information is being conveyed by the Party to the Mediator in confidence, the Mediator will not disclose the information.

At the request of the Parties, the Mediator will provide an evaluation of the Parties' cases and of the likely resolution of the dispute if it is not settled. The Parties agree that the Mediator is not acting as an attorney or providing legal advice on behalf of any Party.

If necessary, and if such discussions seem likely to be useful, the Parties and/or their representatives will make themselves available for further discussions or meetings after the mediation session.

## Confidentiality

This entire process is a compromise negotiation. All offers, promises, conduct, and statements, whether oral or written, made in the course of the mediation by any of the Parties, their agents, employees, experts, and attorneys are confidential. Such offers, promises, conduct, and statements will not be disclosed to third parties. They are privileged and inadmissible for any purpose, including impeachment, under Mass. Gen. Laws c. 233, § 23C, and any other applicable federal or state statute, rule, or common law provision. However, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or not discoverable as a result of its use in the mediation. Once the mediation process is fully completed, the Mediator shall destroy any notes, memoranda, or other recordings of any type made by him in connection with the matters disclosed during the mediation.

## Disqualification of the Mediator

The Parties agree not to call the Mediator as a witness or as an expert in any pending or subsequent litigation or arbitration involving the Parties and relating in any way to the dispute which is the subject of the mediation. The Parties and the Mediator agree that the Mediator will be disqualified as a witness or as an expert in any pending or subsequent proceeding relating to the dispute which is the subject of the mediation.

## Miscellaneous

This is a voluntary, non-binding mediation process. The Parties agree to participate in good faith in the entire mediation process. However, any Party may terminate its participation for any reason by written notification to the Mediator and the other Parties.

D. F. Pray, Inc.                                    Town of Sunderland

MEDIATOR

John J. Spignesi

2

   The undersigned, a non-party having participated in the mediation process on behalf of
one of the above-named parties, hereby agrees to be bound by the confidentiality terms and
conditions of this Mediation Agreement.


_____                    _____


_____                    _____

**D.F. PRAY**

35433

VENDOR#-74379  NAME-JOHN J. SPIGNESI, ESQ.         DATE-02/15/05  35433
YOUR INVOICE NO   INV DATE        AMOUNT      DIS/RTNG REFERENCE        NET AMOUNT
FEB.14,2005        02/14/05       1500.00          .00                  1500.00

TOTALS                          1500.00           .00              1,500.00

---

**D.F. PRAY**
*General Contractors*
PROJECT ACCOUNT
25 ANTHONY STREET
SEEKONK, MA 02771

 **Fleet** FLEET MAINE, NA
SOUTH PORTLAND, ME

52-153/112

35433

PAY   ONE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

|  | DATE | AMOUNT |
|---|---|---|
|  | 02/15/05 | $****1,500.00 |

TO THE   74379
ORDER    JOHN J. SPIGNESI, ESQ.
OF       9 BARTLET STREET, NO 185
         ANDOVER          MA 01810

```
                    ***********************
                    ***   RX REPORT   ***
                    ***********************


       RECEPTION OK

       TX/RX NO              6673
       CONNECTION TEL                    5083360551
       CONNECTION ID
       ST. TIME             02/16 17:57
       USAGE T             01'00
       PGS.                     5
       RESULT              OK
```

Exhibit "F"

## RELEASE AND SETTLEMENT AGREEMENT

1. This Release and Settlement Agreement is made by D.F. Pray, Inc., on its own behalf and on behalf of its principals, employees, agents, predecessors, successors, assigns, legal representatives and attorneys, respectively (collectively, "Pray") and the Town of Sunderland, on its own behalf and on behalf of its boards, committees, officials, employees, agents, predecessors, successors, assigns, legal representatives and attorneys (collectively "Town").

2. For and in consideration of a total payment of Nine Hundred Seventy-Five Thousand Dollars ($975,000.00) and other good and valuable consideration, Pray hereby forever releases and discharges the Town of Sunderland, its boards, committees, officials, employees, agents, predecessors, successors, assigns, legal representatives and attorneys, of and from any and all claims, actions, liability, causes of action, grievances, suits, demands, liens, controversies and proceedings, for damage, compensation, benefits, costs, losses, whether known or unknown, claims under G.L. c.93A, expenses, attorneys' fees, declaratory relief and relief arising out of economic injury, property damage and injury, violation of federal or state civil rights, breach of contract, negligence and liabilities in law and equity, past, present or future (collectively, "claims"), existing as of the execution of this Release and Settlement Agreement, including all claims arising out of, resulting from or relating to the litigation entitled D.F. Pray, Inc. v. Town of Sunderland, et al., United States District Court for Massachusetts, C.A. No. 04-11073MLW, Capital Carpet & Flooring Specialists, Inc., v. D.F. Pray, et al., Middlesex Superior Court, C.A. 04-4466 and Titan Roofing, Inc. v. D.F. Pray, Inc., Hampden Superior Court, C.A. No. 04-0887 and the construction project known as the Sunderland Elementary School Emergency Work Project for the Town of Sunderland, Massachusetts ("Project") and the contract therefor between the Town and Pray executed June 21, 2003 ("Contract").

3. Notwithstanding anything to the contrary herein, Pray does not release and expressly reserves and does not waive any and all rights, remedies and defenses (i) arising out of

bodily injury to third parties, or property damage to third parties including said injuries and damages that give rise to insurance subrogation rights or (ii) arising out of hazardous waste, hazardous materials, hazardous substances or mold that is present, existing or released through no fault of Pray or its employees, agents, subcontractors or assigns.

4. For and in consideration of the payment of One Dollar ($1.00), the receipt and sufficiency of which is hereby acknowledged, the Town hereby forever releases and discharges Pray of and from any and all claims, actions, liability, causes of action, grievances, suits, demands, liens, controversies and proceedings, for damage, compensation, benefits, costs, losses, claims under G.L. c.93A, expenses, attorneys' fees, declaratory relief and relief arising out of economic injury, property damage and injury, violation of federal or state civil rights, breach of contract, negligence and liabilities in law and equity, (collectively, "claims") existing as of the execution of this Release and Settlement Agreement, including all claims arising out of, resulting from or relating to the litigation entitled <u>D.F. Pray, Inc.</u> v. <u>Town of Sunderland, et al.</u>, United States District Court for Massachusetts, C.A. No. 04-11073MLW, <u>Capital Carpet & Flooring Specialists, Inc.</u>, v. <u>D.F. Pray, et al.</u>, Middlesex Superior Court, C.A. 04-4466 and <u>Titan Roofing, Inc.</u> v. <u>D.F. Pray, Inc.</u>, Hampden Superior Court, C.A. No. 04-0887 and the construction project known as the Sunderland Elementary School Emergency Work Project for the Town of Sunderland, Massachusetts ("Project") and the contract therefor between the Town and Pray dated June 21, 2003 ("Contract"), excepting only those claims, if any, subsequently arising under warranties or other rights following payment extended to the Town pursuant to the Contract. The parties acknowledge that the one year period referenced in Article 12.2.2 of the General Conditions of the Construction Contract and Article 13.9(9) of the Addendum to the Agreement between the Owner and Construction Manager dated July 21, 2003 has expired.

5. Pray promises, covenants and agrees, on its behalf and on behalf of its legal representatives, assigns and successors, promptly to defend, indemnify, and hold harmless the Town from and against any and all causes of action, claims, demands, direct

2

payment demands, liability, actions, damages of any kind or nature, costs, charges, losses, expenses and attorneys' fees arising directly or indirectly from any claims for damages brought by any subcontractor, laborer or material provider for unpaid contract balances on the Project, but excluding any claims arising from bodily injuries to any third parties and from any insurance, subrogation or indemnification rights arising from any such third party claims for bodily injury damages.

6. Pray promises, covenants and agrees, on its behalf and on behalf of its legal representatives, assigns and successors, promptly to defend, indemnify, and hold harmless the Town from and against any and all causes of action, claims, demands, direct payment demands, liability, actions, damages of any kind or nature, costs, charges, losses, expenses and attorneys' fees arising directly or indirectly from any claims for damages brought by any attorney retained by Pray for unpaid legal fees related to the Project or the litigation referenced in paragraph 2 above, but excluding any claims arising from bodily injuries to any third parties and from any insurance, subrogation or indemnification rights arising from any such third party claims for bodily injury damages.

7. The Town agrees to make payments to Pray in the amount of $688,576.57 on or before October 4, 2005 or upon receipt of the executed original Release and Settlement Agreement from Pray and shall pay $18,423.43 to the U.S. District Court forthwith to satisfy the attorney's lien that was filed by Vena, Riley, Deptula LLP, Pray's former counsel, which Pray disputes, unless the Town receives written notice from Pray and Vena, Riley, Deptula, LLP evidencing mutual agreement on the payment or disposition of the funds prior to the payment of said funds to the Court. The Town agrees to pay the balance of $268,000.00 within six (6) weeks of the execution of this Release and Settlement Agreement by Pray. Both parties agree and acknowledge that the Town shall seek an appropriation in the amount of $268,000.00 at a Special Town Meeting scheduled for October 24, 2005 so as to allow the Town to make the payment within six weeks from the date of execution of this Release and Settlement Agreement. The parties agree that time is of the essence and that they will execute the Joint Motion to Enter Judgment

3

("Joint Motion") attached hereto as Exhibit A, which shall be held in escrow by John J. Spignesi, Esq. and shall be filed by him within forty-eight (48) hours only in the event that Special Town Meeting does not on or before October 26, 2005 appropriate the $268,000.00 or the Town does not make payment of the $268,000.00 within six (6) weeks from the date of execution of this Release and Settlement Agreement. In the event that Special Town Meeting appropriates the $268,000.00 and the Town pays Pray within six (6) weeks of the execution of this Release and Settlement Agreement, the parties agree that the Joint Motion shall not be filed, shall be null and void and that Mr. Spignesi shall destroy the original held in escrow and all copies of the same in his possession.

8. The undersigned represent and warrant that they have the right, capacity and all necessary authority to execute this Release and Settlement Agreement, and represent and warrant that they have not sold, assigned or transferred any of the claims referred to in paragraph Nos. 2 or 3 to any person or entity not identified herein.

9. The undersigned represent and warrant that they have had the opportunity to review said Release and Settlement Agreement and they have had the advice of legal counsel prior to executing this Release and Settlement Agreement and that they execute this Release and Settlement Agreement as their free act and deed.

9. If any provision of this Release and Settlement Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Release and Settlement Agreement.

10. This Release and Settlement Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings, expectations and discussions of the parties, whether oral or written. There are no representations or other agreements between the parties in connection with the subject matter hereof except as specifically set forth in this Release and Settlement Agreement. No amendment, modification, waiver or termination of this Release and Settlement Agreement shall be binding unless executed in writing and signed by the party bound thereby.

4

11. This agreement has been, and shall for all purposes be deemed to have been executed and delivered within the Commonwealth of Massachusetts and the rights and obligations of the parties hereto shall be constructed and enforced in accordance with, and governed by the laws of the Commonwealth of Massachusetts.

12. This Release and Settlement Agreement shall be executed in counterpart, each of which shall be deemed an original, all of which together shall constitute one and the same instrument.

13. The parties agree to enter into stipulations of dismissal, dismissing with prejudice and without costs and with all parties waiving all rights of appeal, in D.F. Pray, Inc. v. Town of Sunderland, et al., United States District Court for Massachusetts, C.A. No. 04-11073MLW, and with respect to the third party claim and counterclaim in Capital Carpet & Flooring Specialists, Inc., v. D.F. Pray, et al., Middlesex Superior Court, C.A. 04-4466 and Titan Roofing, Inc. v. D.F. Pray, Inc., Hampden Superior Court, C.A. No. 04-0887. The parties also agree to enter into a change order for the amount of the payment that exceeds the contract price.

14. This Release and Settlement Agreement contains the ENTIRE AGREEMENT between the parties hereto and the terms of this Release and Settlement Agreement are contractual and not a mere recital.

Dated this __11__ day of __October__ , 2005.

D.F. PRAY, INC.

duly authorized by:

Witness

Signature: _____
Print Name: Ronald Laymist
Title: Vice President

TOWN OF SUNDERLAND

duly authorized by its Board of Selectmen:

Witness

261429/SUND/0012

6

```
********************
***   RX REPORT   ***
********************
```

RECEPTION OK

```
TX/RX NO              8450
CONNECTION TEL                  508 278 7489
CONNECTION ID
ST. TIME             12/29 14:43
USAGE T              03'34
PGS.                  7
RESULT               OK
```

*Exhibit* "G"

[Home] [Selectmen]
**Minutes of Selectmen, September 19, 2005**
**Place: Sunderland Town Office Building**
**Selectmen Present: Scott Bergeron, Tom Fydenkevez, Mike Wissemann**
**Others Present:**
**Behind the Camera:  Tom Zimnowski & Bruce Weston**
================================================================
Call to order: 6:02 P.M.

Roll Call vote to enter into Executive Session; Mr. Fydenkevez: aye; Mr. Wissemann aye, Mr. Bergeron: aye, 3-0 Vote.

7:23pm  Reopen to Open Session.
Thomas McEnaney, Town Counsel was present to give a brief history relating to the D.F. Pray lawsuit.  A tentative settlement has been reached with a final payment of $975,000.  The town would need to produce an additional $268,000 in funds to meet that settlement.  The case started with a request for payment of $1.7 million plus interest and attorney fees.  Due to the higher costs associated with a trial and high risk for the town, total costs could be over $2.5 million.  Town counsel recommended this as a good settlement to resolve this conflict.  It was agreed to pay D.F. Pray $707,000 by the end of September and an additional $268,000 within 6-7 weeks, as we would need a Special Town Meeting to appropriate these additional funds.  Mr. Fydenkevez reiterated that the Board was not displeased with the workmanship/quality provided by D.F. Pray just the value.  Board voted to authorize town counsel to accept mediated settlement of $975,000.  Motion Mr. Fydenkevez, 2nd Mr. Wissemann, 3-0 vote.

Approve Minutes of September 12, 2005 with amendment; Motion Mr. Wissemann, 2nd Mr. Fydenkevez, 3-0 vote.

The Board addressed issues relating to higher fuel costs for heating and school transportation.  It is anticipated that costs could rise over 10% resulting in an additional cost of $2,000-$3,000 to the town just for transportation.  Fuel costs are associated with the price at the Mercantile Exchange at the time of signing the contract with a 10% fluctuation factor.  If prices rise over the 10% of the signing price, the town is required to pay the difference.

The Board of Selectmen will be comparing projected 2006 budget numbers with the recently arrived cherry sheets.  The tax rate may be lower for 2006.

Request from Toni's Sunderland House to participate in Tourist Oriented Directional Signage through MassHighway.  Motion Mr. Fydenkevez to support, 2nd Mr. Wissemann, Vote 3-0.

Vote to accept and authorize the Chair to sign Local Preparedness Grant Award for the Sunderland Fire Department, totaling $12,000.  Motion Mr. Fydenkevez, 2nd Mr. Wisseman,3-0 vote.

Greenfield Community Television requested authorization to air on our channel in October.  Mr. Fydenkevez motion to approve contingent upon Comcast's ability to switch our

community channel back to local controlled programming on Friday following the event.

The Board read correspondence from Sunderland Fire Chief regarding Deerfield's request for support and waiver on EMT staffing. Discussion regarding support of neighboring departments and being able to retain good services to the communities. Mr. Fydenkevez felt it was important that decisions regarding staffing and associated needs should stay locally and not be decided by the state with a blanket policy. Local community services should be evaluated on their needs and support. Of concern is the need to train and retain more EMT's. Mr. Wissemann suggested support of Deerfield's request with a one year waiver to review and address the issues that our neighboring community is facing. The Board reiterated that Sunderland will not be requesting similar waivers as Deerfield. A letter of support is requested to be prepared in support of Deerfield's waiver request with the intention of keeping these types of service questions locally and develop a plan to address their needs.

Read correspondence from Comcast relating to the installation commitment of video returns throughout the town buildings. Comcast has basically met the timeline for installation. The project is not complete due to the delay of installation of poles, line extensions and wiring to or within the buildings.

Discussion of the Board for the establishment of an Economic Development Committee Plan. The committee would have representatives from Finance Committee, Planning Board, Zoning Board, Board of Selectmen, and four members at large. Mr. Biagi also indicated that we had the opportunity to obtain an intern that could work on this project. The board said that a stipend could be made available for the internship. The individual is a graduate student and has experience with economic development. The committee responsibilities would include, TIF grants, marketing the town - especially inclusion in marketing for Franklin County which the town is frequently omitted, development of brochures of the town, GIS maps with water capacity, wells, ability of the WWTP, available land parcels, plans to assist in business start-up. A charge of the committee needs to be established with specific goals and objectives.

The Board will discuss Special Town Meeting dates at their next meeting on September 26, 2005.

Adjourned at 8:34PM.

Respectfully submitted

_____

Robert C. Biagi, Ph.D., Town Administrator

Exhibit "H"

# Sunderland OKs $300,000 to cover school roof repair

**By DIANE BRONCACCIO**
Recorder Staff

SUNDERLAND — The turnout was light for Monday's special town meeting but the vote was decisive: 47 residents unanimously agreed to borrow $300,000 for payment, settlement and final costs for repairs to the Sunderland Elementary School roof.

"I think the town understood that we had to do it," Finance Committee Chairman Richard Lopatka said after the meeting.

Town officials hope the sum will be the last amount needed to square away the school reconstruction costs, after the roof collapsed in February 2003, destroying a third-grade classroom. The total cost for repairs is $5,275,000 — almost as much as it cost to build the school 15 years earlier.

About $268,000 of the $300,000 approved Monday night will go toward the final $975,000 payment to contractor D.F. Pray of Seekonk, a sum that was settled between the town and the contractor through mediation. The remaining $32,000 will be used for any final closing costs or unforeseen expenses.

Most of the money for the settlement has already been approved by voters to be borrowed.

Lopatka said the town is hoping to be reimbursed for 68 percent of the costs through the state School Building Fund, possibly in Fiscal Year 2008.

He said the appropriation voted on Monday will

See SUNDERLAND back page this section

# Sunderland

## From Page 1

add about 25 cents onto the town's tax rate in Fiscal Year 2007. Altogether, $1.51 of the tax rate will go toward the school repair, he said.

Selectman Scott Bergeron said the contractor was asking for a final payment of $1.7 million, which is why the town went through the mediation.

"We certainly didn't want to pay ransom," he said.

Selectman Thomas Fydenkevez said there was disagreement of the value of the work, but not the quality of it. "About 240 change orders

came down over the last two months, as we worried about getting students back to school, and changes caused by unknown conditions of the school." These included mold and structural deficiencies.

"We could have easily spent another $150,000 to $200,000 through the legal process," Fydenkevez said.

You can reach Diane Broncaccio at: dbronc@recorder.com or (413) 772-0261 Ext. 277.